Paul E. KASCH, et al., Petitioners, Appellants,

v.

CLEARWATER COUNTY, et al., Respondents.

No. 49955.

Supreme Court of Minnesota.

Jan. 25, 1980.

Popham, Haik, Schnobrich, Kaufman & Doty, Raymond A. Haik, and Larry D. Espel, Minneapolis, for appellants.

Ekvall & Rasmussen and Aurel Ekvall, Bagley, Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow and Gerald S. Rufer, Fergus Falls, for respondents.

Heard before ROGOSHESKE, KELLY, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Plaintiffs, Paul and Carol Kasch, appeal from a judgment of the district court dismissing their action against defendants, the Clearwater County Board of Commissioners,[1] for a writ of mandamus or declaratory judgment requiring the board to act, pursuant to Minn.Stat. § 97.481 (1978), on the Kasches' proposal to sell their farm to the Department of Natural Resources (DNR).[2] The issues raised are the degree of discretion the legislature intended to vest in the county board of commissioners by requiring in § 97.481 that land sales by private landowners to the DNR be approved by the board in the county where the land is located and whether the board acted properly in refusing to act on the plaintiffs' proposal to

1. The action was brought against the board as a whole and against the commissioners individually.

2. Prior to this action, plaintiffs brought suit in United States District Court for the District of Minnesota alleging that the county board had violated their constitutional rights by failing to act on their request that the board approve the sale of their property to the DNR. By order of September 18, 1978, the federal court held that abstention was proper, since a federal court should avoid a decision based on federal constitutional questions if unsettled state law can effectively dispose of the controversy.

sell their farm to the DNR. We conclude that, as an agency of the state, the board must discharge its duty under § 97.481 in a manner that is consistent with the state policy of acquiring and preserving wetlands and wildlife lands, and that the board's refusal to act on the plaintiffs' proposed sale to the DNR is inconsistent both with recognized state policies and decisionmaking standards established by this court for local governing entities. Accordingly, we reverse and remand with instructions to the trial court to order the board to approve or disapprove the proposed sale.

The pertinent language of § 97.481 entitled "Acquisition of Wildlife Lands" authorizes the commissioner of natural resources to acquire, by lease or purchase in the name of the state, "wildlife lands * * * which he finds desirable to acquire in the interests of water conservation relating to wildlife development programs" and, when acquired, "to develop the same in the interest of wildlife, recreational or public hunting areas * * *." The statute also provides, however, that "[n]o such lands shall be acquired *until first approved* for such purchase, or lease, by a majority of the members of the board of county commissioners in the counties where the land to be purchased, or leased, is located." (Emphasis supplied.) Regrettably, for reasons we cannot ascertain, the statute gives no guidelines for the county board's use in deciding whether to approve such purchases other than to provide that "[i]n the counties in which a soil and water conservation district is organized the supervisors will act as counsellors to the board of county commissioners regarding the best utilization and capability of the land proposed for purchase, including the questions of drainage and flood control."

Plaintiffs are fee owners of approximately 240 acres in Clearwater County, Minneso-

ta. The land consists of 160 acres of brush or woods, 30 acres of wetlands, and 50 acres of cropland. The DNR has demonstrated its intention and willingness to acquire this property by obtaining from the Kasches an option to purchase the land. There is no dispute that the property is suitable for wildlife habitat.

On March 15, 1977, Leon Johnson, Bemidji area wildlife manager for the DNR, petitioned the Clearwater County Board of Commissioners for its approval of the purchase of plaintiffs' property. The board took no action on the matter at the meeting but did request a report on the land from the Clearwater Soil and Water Conservation District Board. The proposed sale was discussed again at the March 21 meeting of the board, and at the April 11 meeting Johnson presented a resolution for the board's approval that would have allowed the DNR to purchase the land. On both dates the board declined to approve the transaction. The minutes of the April 11 meeting indicate that there was discussion concerning the reduction of the tax base that would result from the sale of privately owned lands,[3] but the board did not adopt, at either meeting, any specific reasons for its failure to approve the sale.

At the May 9 meeting, after Johnson again requested that the board approve the sale, Commissioner Albert Gordon moved that the board grant the DNR permission to purchase plaintiffs' lands, but the motion died for lack of a second. No reasons were stated for the disapproval of the transaction. Johnson also appeared at the June 13 and July 11 meetings and asked the board to consider the proposed sale, but both times the board declined to take any action and did not state reasons for its failure to act.

On February 14, 1978, Johnson again appeared before the board, together with

---

**3.** The loss of tax revenues to the county that results from the state ownership of lands is partially offset by Minn.Stat. § 97.49 (1978), which provides in part:

Subd. 3. A sum equal to 35 percent of the gross receipts from all special use permits and leases of lands acquired for public hunt-

ing grounds and game refuges or 50 cents per acre on purchased land actually used for public hunting grounds and game refuges, whichever amount is the greater, shall be paid out * * * annually to the county in which said lands are located * * *.

plaintiff Paul Kasch and plaintiffs' attorney. Counsel for the board was also present, and a written record of the proceedings was taken by a court reporter. The board again declined to take any formal action on the proposed sale and again gave no reasons for its failure to act. Counsel for the board expressed the opinion that no further action by the board was necessary. Plaintiffs' action seeking alternatively mandamus or declaratory relief was dismissed by the trial court, and this appeal followed.

Before evaluating the actions of the board in this matter, we consider the role of the board in approving sales of privately owned land to the DNR pursuant to § 97.481. The parties to this action have differing interpretations of the scope of the board's duty under § 97.481. Plaintiffs would have us construe the statute very narrowly and conclude that the board's duty is limited to determining whether the lands to be sold are suitable wildlife lands and wetlands. Defendants, on the other hand, conclude that the board has unfettered discretion in acting upon sales to the DNR under § 97.481, reasoning that the board, as the legislative body of the affected area, is well qualified to decide whether such sales should be approved. This controversy results from the lamentable failure of the statute to specify criteria for the county board's use in deciding whether to approve sales to the DNR. While the statute does direct the soil and water conservation district of the county to counsel the board as to the proper utility of the land proposed for purchase, this, without more, does not adequately set forth the factors the board should consider in deciding whether to approve a proposed sale.

▪ Because the manner in which the legislature intended the board to act is uncertain, the statute must be construed in light of the general legislative purpose. In doing so, we consider the policy and object of the enactment, along with the general legislation on the subject viewed as a whole.

*Gleason v. Geary*, 214 Minn. 499, 8 N.W.2d 808 (1943). The stated purpose of § 97.481 is to ensure, through state ownership, that wetlands and wildlife lands are preserved and properly developed. Section 97.481 is one of several statutes that establish a strong policy of managing Minnesota's natural resources in an environmentally responsible way [4] and is consistent with and advances the broad objectives of Minn.Stat. ch. 116D (1978), entitled "State Environmental Policy." Section 116D.02, subd. 1, states: "The legislature * * * declares that it is the continuing policy of the state government, in cooperation with federal and local governments, * * * to use all practicable means * * * to create and maintain conditions under which man and nature can exist in productive harmony * * *." More specifically, § 116D.02, subd. 2(j), provides that the state may "[p]reserve important existing natural habitats of rare and endangered species of plants, wildlife, and fish, and provide for the wise use of our remaining areas of natural habitation, including necessary protective measures where appropriate"; and subd. 2(n) encourages the state to "[i]mprove management of renewable resources in a manner compatible with environmental protection."

▪ Counties are distinct legal entities organized as subordinate agencies of state government. Counties do not exist exclusively for the common benefit of their citizens but, as subordinate agencies of the state, are responsible for exercising some of its functions. *See* 1 McQuillan, Municipal Corporations § 2.46a (3d rev. ed. 1971). Thus, while counties may have unlimited discretion in certain areas, when a county board is acting pursuant to a state statute it must do so in a way that is consistent with the objectives of the statute and other announced state policies. This court has stated:

> [A]s a political subdivision of the state, the county has a greater duty than does a private individual to see that legislative

*County of Freeborn v. Bryson*, 309 Minn. 178, 243 N.W.2d 316 (1976).

---

4. *See, e. g.*, Minn.Stat.1978 §§ 84.024, 84.033, 84A.10, 86.02, 86A.02, and 97.48, subd. 13. *See*

policy is carried out. As a creature of the state deriving its sovereignty from the state, the county should play a leadership role in carrying out legislative policy. *County of Freeborn v. Bryson*, 309 Minn. 178, 188, 243 N.W.2d 316, 321 (1976).

We conclude that the requirement in § 97.481 that land sales to the DNR be approved by the county board was included to give county boards an opportunity to consider local concerns affected by sales to the DNR that may outweigh the state policies advanced by the statute, not to give the board an unlimited veto power over such sales. Thus, unless a valid local interest is threatened by a proposed sale, a county board must, as an agency of the state, approve those sales to the DNR that advance established state policies. While it is impossible to foresee all of the circumstances that would justify a county board's disapproval of a proposed sale to the DNR, a sale may be inappropriate where a board determines, for example, that the land to be sold is not suitable for wildlife development, or that wildlife development does not constitute the best utilization of the land, or that the proposed use is inconsistent with proper drainage [5] and flood control.

We turn next to the question of whether the board properly refused to act on the plaintiffs' proposal to sell their farm to the DNR pursuant to § 97.481. While there have been no cases challenging the actions of a county board under § 97.481, we have established procedural standards for decisionmaking by local government units in cases where a denial by a city council or county board of a request for a special use permit has been challenged. Since in both the present case and in cases involving special use permits someone is seeking approval from the governing entity for a specified land use, we conclude that the same procedural standards should apply to decisions involving land sales pursuant to § 97.481.

These procedural standards were established in *Zylka v. City of Crystal*, 283 Minn. 192, 167 N.W.2d 45 (1969), where we held that when a local governing board makes a decision without contemporaneously stating reasons for its actions, its decision will be prima facie arbitrary. When such a decision is challenged, the local governing board will bear the burden of persuading the reviewing court that the facts and circumstances before it gave rise to legally sufficient reasons for denial or revocation. *Corwine v. Crow Wing County*, 309 Minn. 345, 244 N.W.2d 482 (1976).

In the present case, where the board not only failed to give reasons but refused to act at all on the proposed sale, the argument that the board acted arbitrarily is certainly compelling. Moreover, the record does not indicate that the board has satisfied its burden of showing legally sufficient reasons for its failure to approve the sale. We hold, therefore, that the board's nonaction on the plaintiffs' proposal to sell their land to the DNR was arbitrary. We do not accept the trial court's findings that the board "fully heard out the plaintiffs" and thereafter declined to approve the proposed sale.[6] While there was an implied refusal to approve the sale, a proper reading of the record is that the board refused to take action on the matter—either to approve or disapprove—and that the matter is still pending before the board. Moreover, that the plaintiffs were allowed to be heard at several meetings and to take a written

---

5. Section 97.481 itself provides that DNR land purchases should not interfere with statutory drainage activities. The statute provides in part:

> The commissioner in the purchase of such wetlands must recognize that when a majority of land owners, or owners of a majority of the land in the watershed, petition for a drainage outlet, that the state should not interfere, or unnecessarily delay such drainage proceedings when such proceedings are conducted according to the Minnesota Drainage Code.

6. Unlike most civil actions where the trial court can only be reversed if its factual findings are clearly erroneous, in this case, as in zoning matters, the role of the reviewing court is to consider the decision of the local governing unit on the record made before it independently of the findings of the district court. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865 (Minn.1979).

record of one meeting does not in any way explain the board's inscrutable failure to affirmatively act on the matter. Because the plaintiffs' request for approval of the sale of their farm to the DNR is still before the board, we reverse and remand to the trial court with instructions that the trial court order the board to affirmatively approve or disapprove the proposed sale.

Reversed and remanded.