McLEOD COUNTY BOARD OF COM-
MISSIONERS AS the DRAINAGE AU-
THORITY FOR McLEOD COUNTY
DITCH NO. 8, Appellant,

v.

The STATE of Minnesota, DEPART-
MENT OF NATURAL RE-
SOURCES, Respondent.

No. C5–95–2024.

Court of Appeals of Minnesota.

June 11, 1996.

Review Denied Aug. 20, 1996.

Michael Junge, McLeod County Attorney, Jody Winters, Assistant County Attorney, Glencoe, for Appellant.

Hubert H. Humphrey, III, Attorney General, Matthew B. Seltzer, Assistant Attorney General, St. Paul, for Respondent.

Arvid Wedland, Wedland and Alm, Blue Earth, for amicus Association of Minnesota Counties.

Kim Mastro, St. Paul, for amicus Association of Minnesota Counties.

A.W. Clapp, III, St. Paul, for amicus Central Minnesota Audubon Society.

Considered and decided by WILLIS, P.J., and CRIPPEN and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

The McLeod County Board of Commissioners challenges a district court order denying a motion for declaratory judgment and concluding that application of the Wetland Conservation Act does not effect a taking of property rights in violation of the Minnesota Constitution. We affirm.

## FACTS

McLeod County Ditch No. 8, including Lateral No. 3, was established in 1904 or 1905 to improve the drainage of agricultural lands in Hale Township. Lateral No. 3 runs between Bullhead Lake and the main channel of Ditch No. 8.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

The condition of the land immediately after construction of the ditch is unknown, but the parties stipulated that a significant portion of the land within the meandered boundaries of Bullhead Lake continued to be wetlands after the original construction.

County records do not indicate if any repairs were done on Lateral No. 3 during or prior to 1953, but the parties stipulated that none have been done since 1953. Due to the lack of repair work by the county, portions of Lateral No. 3 have become obstructed, causing Lateral No. 3 to provide drainage at a reduced level of efficiency. According to the stipulation, however, all the farms surrounding Bullhead Lake are currently in active use, and the property owners continue to farm substantially the same areas they have farmed for many years.

The landowners adjacent to Lateral No. 3 requested that the county clean out Lateral No. 3. This request followed payment of an assessment by those landowners for work done on the main branch of Ditch No. 8 in 1992. McLeod County serves as both the drainage authority for Lateral No. 3 and as the local government unit for the administration of the Wetland Conservation Act for the area of Bullhead Lake.

Minnesota's Wetland Conservation Act (the Act), Minn.Stat. § 103G.221–.2373 (1994), was enacted in 1991. Interim procedures to enforce the Act became effective in McLeod County in 1992, and permanent rules became effective in McLeod County on January 1, 1994. Under Minn.Stat. § 103G.2241, subd. (a)(3) (1994), a repair project on Lateral No. 3 would be exempt from the Act if it did not drain wetlands that have been in existence for more than 20 years.

The parties stipulated that on December 15, 1993, the McLeod County Wetlands Advisory Committee approved a 96.7 foot elevation as the 20–year surface water elevation. This elevation was established by the McLeod County Technical Evaluation Panel. At the same time, the advisory committee also passed a resolution that any work on Lateral No. 3 could only drain Bullhead Lake

art. VI, § 10.

to the 96.7 foot elevation. The county was aware of this resolution before excavation began on Lateral No. 3.

Excavation work began in December 1993. On December 27, 1993, a conservation officer from the Minnesota Department of Natural Resources (DNR) issued a cease and desist order under the Act to stop the excavation. The contractor recommenced excavation on December 30, but stopped working when the conservation officer informed him that he was in violation of the cease and desist order.

The parties stipulated that the county did not obtain an exemption determination prior to beginning work, nor did the county attempt to conduct the project in a manner that would ensure that the repair project would fall within the exemption under Minn. Stat. § 103G.2241, subd. (a)(3). The DNR stated that it would rescind the cease and desist order if the county were to obtain an exemption, a replacement plan determination, or place a control structure at the mouth of Bullhead Lake and Lateral No. 3 to maintain the outlet level at 96.7 feet.

According to the stipulated facts, if the remaining portion of Lateral No. 3, between the excavation point and Bullhead Lake, were repaired to the same condition as originally constructed, the outlet level of Bullhead Lake would be lowered below its present elevation. The parties also stipulated that, under the Act, the county cannot lower the outlet level of Bullhead Lake below 96.7 feet unless replacement wetlands are established. The cost of the replacement wetlands would be paid by the ditch system, which is funded by the landowners who have been assessed for the benefits of the ditch system.

The district court concluded that the Act does not effect a taking of property rights in violation of the Minnesota Constitution. This appeal followed.

## ISSUE

Does the application of the Minnesota Wetland Conservation Act effect a taking of property rights in violation of the constitution?

## ANALYSIS

The county requests that this court find the Act unconstitutional because it effects a taking of the landowners' property right to have ditches maintained.

When reviewing challenges to the constitutionality of statutes, "this court recognizes that the interpretation of statutes is a question of law." *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993). This court is, therefore, not bound by the conclusions of the lower court. *Id.* We presume that state statutes are constitutional, "and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted).

### Standing

The state argues that the county lacks standing to assert the constitutional rights of the landowners because the county cannot show that it has suffered any injury in fact.

The district court stated, and we agree, that

[t]o the extent that the County argues a taking of property by the encroachment of water on the property owners' land, the Court rejects this argument as beyond the scope of the County's standing in this matter. That is, if the Court accepts that the County has standing pursuant to Minn. Stat. § 103E.705 as the drainage authority, that standing only extends to the drainage rights of the property owners, and not to their individual rights in the property they own around Bullhead Lake.

The district court concluded that the county "is in an appropriate position to assert the property owners' rights in having the ditches maintained" because it is "the only party entitled to conduct ditch clearing activities."

Standing may be conferred by statute. *In re Objections & Defenses to Real Property Taxes for the 1985 Assessment,* 410 N.W.2d 321, 322 (Minn.1987). The state statute on the repair of drainage systems provides that

[a]fter the construction of a drainage system has been completed, the drainage au-

thority shall maintain the drainage system that is located in its jurisdiction * * * and provide the repairs necessary to make the drainage system efficient.

Minn.Stat. § 103E.705, subd. 1 (1994). The drainage authority is the "board or joint county drainage authority having jurisdiction over a drainage system or project." Minn. Stat. § 103E.005, subd. 9. Thus, we agree with the district court that the statute confers standing on the county to assert the right of the landowners to have the ditch maintained.

The state also argues that the county should be required to exhaust its administrative remedies before seeking judicial relief, claiming that the county should seek an exemption from the Act. Minnesota courts, however, have "consistently held that administrative remedies need not be pursued if it would be futile to do so." *McShane v. City of Faribault,* 292 N.W.2d 253, 256 (Minn. 1980).

■ The county argues that it would be futile to attempt to pursue its administrative remedies. The county contends, and we agree, that because the parties stipulated that the completion of the repair project at issue would drain the wetlands below the acceptable level, an application for an exemption would be denied. We also agree that pursuing a replacement plan or constructing a control mechanism would not resolve the issue of whether the Act effects a taking. Thus, exhausting administrative remedies would be futile, and the county appropriately sought judicial relief.

The state further argues that the county's claims are not ripe for judicial review because there has not been a final decision regarding the application of the Act. Because we determined that it would be futile for the county to exhaust its administrative remedies, the claim is ripe for judicial review.

**Property Right**

■ The county claims that the landowners acquired a property right to have the ditch maintained to the depth of its original construction.

■ The Minnesota Supreme Court has stated that

Once a ditch system is established, the order creating it constitutes a judgment in rem. * * * Thereafter, every owner of land who has recovered damages or been assessed for benefits has a property right in the maintenance of the ditch in the same condition as it was when originally established.

*Fischer v. Town of Albin,* 258 Minn. 154, 156, 104 N.W.2d 32, 34 (Minn.1960) (quoting *Petition of Jacobson v. Kandiyohi County,* 234 Minn. 296, 299, 48 N.W.2d 441, 444 (1951)). Thus, the landowners have a right to have the ditch maintained, and it is the county that must undertake the maintenance. However,

as a political subdivision of the state, the county has a greater duty than does a private individual to see that legislative policy is carried out. As a creature of the state deriving its sovereignty from the state, the county should play a leadership role in carrying out legislative policy.

*County of Freeborn v. Bryson,* 309 Minn. 178, 188, 243 N.W.2d 316, 321 (Minn.1976). Therefore, when the county undertakes the maintenance of a ditch, pursuant to statute, "it must do so in a way that is consistent with the objectives of the statute and other announced state policies." *Kasch v. Clearwater County,* 289 N.W.2d 148, 151 (Minn.1980).

The supreme court has stated that Aldo Leopold's " 'land ethic simply enlarges the boundaries of the community to include * * * the land.' " *In re Application of Christenson,* 417 N.W.2d 607, 615 (Minn. 1987) (quoting *Bryson,* 309 Minn. at 189, 243 N.W.2d at 322). The court has reaffirmed that

the state's environmental legislation had given this land ethic the force of law, and imposed on the courts a duty to support the legislative goal of protecting our state's environmental resources. Vanishing wetlands require, even more today than in 1976 when *Bryson* was decided, the protection and preservation that environmental legislation was intended to provide.

*Id.* Thus, the county has an obligation to maintain the ditch in a manner consistent

with the policies established by the legislature in the Act.

### Taking

█ The county contends that maintaining the ditch in a manner consistent with the Act effects a taking of the landowners' property right to have the ditch maintained to the level of its original construction. However, the county seeks injunctive relief rather than money damages. The Minnesota Constitution provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. I, sec. 13. Because there is no basis under the constitution for granting the county injunctive relief, the claim must be denied.

█ From oral argument, the court inferred that McLeod and other counties are in opposition to the law as expressed in the Act, and some may choose not to implement or support it. But to pursue that line of reasoning is to abandon the obligation of county government. It is not for this court "to question the wisdom * * * of a police regulation." *Lee v. Delmont,* 228 Minn. 101, 108, 36 N.W.2d 530, 536 (1949). The county's remedy lies with the legislature.

### DECISION

Under the Minnesota Constitution, there is no basis for granting the county injunctive relief for a taking claim.

**Affirmed.**