ROBERT G. CORWINE v. CROW WING COUNTY.
ROBERT NADER AND OTHERS, INTERVENORS.

244 N. W. 2d 482.

July 16, 1976—No. 46151.

346

*Borden, Steinbauer, Borden & Rathke, Charles P. Steinbauer,* and *Stephen C. Rathke,* for defendant-appellant.

*Will Hartfeldt,* for intervenors-appellants.

*Larson, Mannikko & Swenson, Robert P. Larson,* and *Joseph L. Mannikko,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

The county and intervenors separately appeal from summary judgment ordering the issuance of a special-permitted-use permit

and a planned-unit-development permit to plaintiff for a campground.[1] We reverse and remand.

Plaintiff is the owner of a 106-acre farm, adjacent to Nokay Lake, in Nokay Lake Township, Crow Wing County. The record discloses that plaintiff had expended some time and money in the development of his property as a campground before the adoption of the Crow Wing County Interim Zoning Ordinance in 1970. Plaintiff's applications for conditional-use permits and planned-unit-development permits to allow him to operate his campground under the interim zoning ordinance were twice denied by the Crow Wing County Planning Commission, once in 1970 and once in 1971.

On January 4, 1972, Crow Wing County adopted the permanent zoning ordinance involved in this case. On June 8 of that year plaintiff again applied to the planning commission for special-permitted-use and planned-unit-development permits for his campground. The planning commission held several public hearings on plaintiff's application, approving it on October 4, 1972, subject to certain conditions, including conditions relating to the total number of campsites, noise regulation, screening between the lake and campground, and sanitary system. Certain parties, property owners of lakefront cottages on Nokay Lake and certain others, intervened in the proceedings in the planning commission and appealed the commission's decision to the county board of adjustment in accordance with procedures set forth in the county zoning ordinance. On January 4, 1973, the board of adjustment upheld the decision to issue the permits, subject to additional conditions relating to expansion of a buffer zone and to an access road. The intervening property owners appealed to

[1] Plaintiff moved at oral argument to dismiss the appeal of the county for failure to *file* the county's notice of appeal as required by Rule 103.01(1), Rules of Civil Appellate Procedure. The motion is denied. The record reveals that the notice was timely filed in the district court but for some unexplained reason had not reached this court at the time of oral argument. The defect, if any, in the procedure is neither jurisdictional nor prejudicial.

the county board, which revoked the permits on June 5, 1973.

Plaintiff petitioned the district court for a writ of mandamus and injunction ordering the issuance of the required permits for his campground. Zoning Ordinance, § 14.2. He moved for summary judgment in that action, including as a part of his motion his affidavit and depositions of a few of the county commissioners and property owners. The county responded with an affidavit in support of a motion by certain property owners to intervene.

The district court found that there were no issues of material fact and that plaintiff was entitled to the permits as a matter of law. The district court then ordered issuance of the permits, deleting some of the conditions previously imposed and modifying others. The county and property owners moved to vacate summary judgment, attaching an additional affidavit. The court denied this motion. Further facts revealed by the affidavits and depositions will be stated later in this opinion.

Two issues are presented on appeal: (1) Did the court err in holding the county board's revocation of the permits arbitrary as a matter of law for failure to attach findings of fact or reasons for the revocation? (2) Were the reasons for revocation given by the county board legally insufficient?

*County Board's Alleged Failure to Attach Findings or Reasons for Revocation*

In granting summary judgment reversing the county board's decision to revoke the permits, the district court relied heavily on previous decisions of this court in concluding that the board's revocation of the permits was "arbitrary as a matter of law, due to the failure of the County to state any reasons and facts showing a need to revoke." The district court relied chiefly on this court's decision in Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969). In Zylka this court upheld the lower court's conclusion that the city had been arbitrary and unreasonable in denying a landowner a special-use permit to construct a filling station in a commercially zoned area. Neither the city council

nor the planning commission which had reviewed the land-owner's application had given any reason for denial. Moreover, the city had made no showing at trial that a filling station was incompatible with the area or that operation of a filling station there would in any substantial way interfere with the public health, safety, or general welfare of the community. In articulating the basis for its decision in Zylka, this court made two important statements regarding special-use permits. First, it established a rule whereby arbitrariness could be found by a reviewing court when a municipal ordinance contained no specific standards for granting or denying special-use permits:

"* * * In theory, if not in practice, provisions authorizing the issuance of special-use permits are intended to provide more flexibility in land-use control than provisions authorizing a variance. While the administering body, be it the council itself or a planning commission to which power to act is delegated, has broad discretionary power to deny an application for a special-use permit, it cannot do so arbitrarily. A denial would be arbitrary, for example, if it was established that all of the standards specified by the ordinance as a condition to granting the permit have been met. *Where the ordinance does not specify standards, as is usually the case when final authority to determine whether a permit shall be granted is retained by the council, an arbitrary denial may be found by a reviewing court when the evidence presented at the hearing before the municipal governing body and the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general welfare of the area affected or the community as a whole.*" 283 Minn. 196, 167 N. W. 2d 49. (Italics supplied.)

Second, the court held that a prima facie case of arbitrariness was made out when a decision-making body failed to record legally sufficient reasons for its decision:

"It is undisputed that in passing upon plaintiff's application neither body preserved any record of the hearing before it, made

any findings of fact, or recorded any reason or reasons for its action. When plaintiff established this in his case in chief, the trial court had no choice but to conclude that a prima facie case of arbitrariness had been established. Surely, where nothing more appears than that the council denied the application after a hearing before and upon recommendation of its planning commission, there is no sufficient evidentiary basis for a court to infer that the council's action was reached upon a consideration of the facts and was based upon reason rather than the mere individual whim of the council members. While plaintiff, indeed, has the burden to show arbitrariness, the failure of the council to record any legally sufficient basis for its determination at the time it acted made a prima facie showing of arbitrariness inevitable." 283 Minn. 198, 167 N. W. 2d 50.

After making this statement, however, the court proceeded to consider evidence presented by the city which allegedly rebutted the prima facie showing. The court found this rebuttal insufficient.

The second statement in Zylka has been reaffirmed and expanded in subsequent cases.[2] In Inland Construction Co. v. City of Bloomington, 292 Minn. 374, 195 N. W. 2d 558 (1972), this court held that a trial court erred in sustaining the city council's denial of a conditional-use permit for a shopping center where the court had based its findings on reasons not articulated by the city council. In Metro 500, Inc. v. City of Brooklyn Park, 297 Minn. 294, 211 N. W. 2d 358 (1973), this court refused to rely on reasons for denial which apparently had some basis in the record, but were not formally articulated by the city council as reasons for denial. We stated:

"We cannot find any evidence that would support a finding

[2] The first statement has likewise become an accepted part of Minnesota law. See, e. g., Hay v. Township of Grow, 296 Minn. 1, 206 N. W. 2d 19 (1973); Enright v. City of Bloomington, 295 Minn. 186, 203 N. W. 2d 396 (1973); Twin City Red Barn, Inc. v. City of St. Paul, 291 Minn. 548, 192 N. W. 2d 189 (1971).

by the trial court that the council, contemporaneously with the denial of the special permit, found or gave as reasons for that denial that the proposed filling station would seriously depreciate surrounding property values or would cause serious traffic congestion. It follows that any finding by the trial court to the contrary would be clearly erroneous." 297 Minn. 303, 211 N. W. 2d 364.

In Board of Benton Township v. Carver County Board, 302 Minn. 493, 498, 225 N. W. 2d 815, 818 (1975), however, we indicated in the following statement that the prima facie showing of arbitrariness may be rebutted in some cases, and that the burden may be different when the permit is approved rather than denied:

"It is clear that the board neither accompanied its decision by findings of fact, nor did the board preserve a record of its deliberations vis a vis the application at issue. Thus, under Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969), a prima facie case of arbitrariness was established. However, the record shows that the board had before it ample evidence that Carver Creek's proposed use would not endanger the health, safety, or welfare of the community. This evidence was more than sufficient to rebut the prima facie case of arbitrariness, thereby allowing the trial court to uphold the board's decision.

"Moreover, since zoning laws are a restriction on the use of private property, we hold that there is a heavier burden required on the part of those who challenge the *approval* of a conditional-use permit, as compared to the degree of proof required of a landowner whose application is denied.

"Plaintiffs rely on Chandler v. Kroiss, 291 Minn. 196, 190 N. W. 2d 472 (1971), which is the only case in which this court has previously considered a challenge to the *approval* of a conditional-use permit. That case, however, did not hold that failure of a local unit of government to make contemporaneous findings or to preserve a record does not render the decision of that body *per se* invalid. Rather, as in the instant case, a reviewing court

may look to the evidence in the record, and, absent a showing that the proposed use would be detrimental to public health, safety, or welfare, then the governmental decision must be upheld."

When a use permit is approved, the decision-making body is always implicitly giving the same reason—all requirements for the issuance of the permit have been met. Under these circumstances, that body should not have to find negatively that alleged failures to meet requirements are without merit. The burden is fairly on those who would challenge that body's decision to establish the alleged failures and show an abuse of discretion.

When a decision-making body denies or revokes a permit, however, we think the above cases and fundamental fairness to petitioning property owners demand a stricter standard of review in the district court. Since the court is reviewing the decision of another body, it should, of course, confine itself at all times to the facts and circumstances developed before that body. If the decision-making body does not state reasons contemporaneously with its action, its decision will be prima facie arbitrary, and it will bear the burden of persuading the reviewing court that the facts and circumstances before it gave rise to legally sufficient reasons for denial or revocation. If the decision-making body does state reasons, review will be limited to the legal sufficiency and factual basis for those reasons. When reasons are given, the party seeking review must bear the burden of persuading the reviewing court that those reasons are legally insufficient.

Applying the above to the instant case, we hold that the trial court erred in holding that the county board's decision was arbitrary as a matter of law. The trial court found the following as fact:

"The Board of Commissioners issued the following statement as a basis of its decision to revoke:

'On motion of Commissioner Krueger seconded by Commissioner Schalow to hereby revoke the Planned Unit Development Permit and Special Permitted Use permit previously issued to Robert Corwine for the construction of a public campgrounds

for tenting, travel trailers, and pickup campers on the following described property: "Government Lot 3 North 1/2 of Southeast 1/4, Section 13, Township 45, Range 29" and *that such revocation be based on Section 5.4-3-15 of the Crow Wing County Zoning Ordinance which pertains to the adverse effect such campground will have on adjacent property; and also the possibility that the campground may have an adverse effect on Nokay Lake itself*, all members voted "AYE", except Commissioner Kunkel who abstained.'
No other reasons or findings were provided or made by the Board." (Italics supplied.)

The board obviously gave reasons within the meaning of Zylka, two of them: (1) Ordinance, § 5.4-3-15; and (2) adverse effect on Nokay Lake. While the reasons should be more precise and specific, they are not so general as to compel an inference that the board was evading its responsibility to give reasons. Therefore, the district court should have accepted the reasons at face value and confined its review to their legal sufficiency. While this error might itself constitute sufficient grounds for reversal, we will proceed to further review the district court's evaluation of the reasons in order to maximize efficiency and minimize confusion in the further proceedings which must be had below.

*Legal Sufficiency of the Board's Two Reasons*
    *Standards, § 5.4-3-15*

Crow Wing County has specifically adopted standards relating to campgrounds. Section 5.4-3-15 of those standards provides:

"It shall be the policy of this Standard to permit campground facilities within the County under controls as shall be necessary to allow such campground facilities to be compatible with adjoining or nearby land use. New campgrounds, within one-eighth (1/8) mile of any residential district or rural residential district, *shall be permitted only after investigation thereof shall show that such campground will not have any unreasonable adverse effect on adjacent property.* This policy should be reviewed an-

nually by the Planning Advisory Commission of the County."
(Italics supplied.)

Adjacent property is defined in Ordinance, § 2.1-2, as:

"Any portion of a lot or larger tract of land that (a) is not
over one-eighth (1/8) mile from the concerned premises, and
(b) has a common property line with the concerned premises.
* * *"

The district court found that plaintiff's land was within 1/8 mile
of a rural residential district composed of 6 lakeshore lots, but
that only one of these lots was "adjacent" to plaintiff's proposed
campground. The court also found, relying on plaintiff's uncon-
tradicted affidavit, that the lot was of no great value. These
findings are challenged on appeal. While the county board had
before it statements of four realtors and a banker regarding ad-
verse impact on value of property around the lake, this property
was not "adjacent" within the meaning of the ordinance. There-
fore, the district court was correct in holding the first reason
given by the board to be legally insufficient.

*Adverse Impact on Nokay Lake*

The major problem in this case arises from the fact that the
county and intervenors made no effort to introduce anything
more than a single conclusionary affidavit in opposition to the
motion for summary judgment. This affidavit, which was a part
of a motion to intervene, standing alone, does little more than
identify the moving parties and their status as landowners at
Nokay Lake. It was not until the motion to vacate summary judg-
ment that the court formally had before it a verified pleading
in intervention and depositions of certain county commissioners
and property owners which reveal the facts in greater depth. In
denying the motion to vacate, however, the court noted that it
had considered the depositions prior to granting summary judg-
ment and found no issues of fact therein. Therefore, these ma-
terials must be examined, at least to determine whether the
district court abused its discretion in refusing to vacate sum-
mary judgment when confronted with the whole record.

Three of the county commissioners who voted in favor of the revocation of the permits were deposed. Commissioner Schalow, who had abstained when the matter was before the planning commission because he wanted to avoid a possible tie vote, testified as follows regarding the board's discussion of the permits:

"Q. Could you review for me the discussions that went on among the county commissioners as you remember?

"A. Well, Mr. Larson, I guess there are numerous things that were discussed. One of the things that was discussed quite extensively was the access to the property.

"Q. Could you be more specific about that?

"A. Well, as I mentioned before, we had been out and looked at the property, and it seemed very obvious to me and maybe to others that probably big trailers could not pass on the winding road.

"We saw a piece of road that moved between somebody's home or summer cabins that if there was any extensive widening, it would have taken some property from those homes. Those things were discussed.

"We talked about things like the closeness of the sanitary disposal system to the second lake, if it was a lake or pond, or whatever it was, on the north side of the property. We talked about published reports that we had seen in the past on the condition of the waters of Nokay Lake out of a publication I think called Pollution Monitor calling attention to the high phosphate count of this lake."

He also testified to his own doubts as to general environmental impact, relying specifically on the verified pleading of the intervenors which had been filed with the board.

Commissioner Rau, who had voted to revoke the permits, testified as follows:

"Q. * * * Why did you vote against the Corwine camp ground as opposed to being in favor of the Knieff camp ground?

"A. Well, one reason would be was the road. It was a poor design and underdeveloped, and almost going through private

property, and so near the homes, the cabins, on each side of the road. *It was a hazard, and the proposed drain field on the Corwine site was right along side a low area or swamp that drains into the lake.*" (Italics supplied.)

He also testified that the lake was small and over-populated.

Commissioner Murphy testified as follows:

"Q. Could you describe to me what adverse effect those people would have on the lake?

"A. Well, I would say by pollution to the lake, because for that size lake, I don't think it could stand that kind of—that size development on the lake, and looking at the—where this sewage system was draining into, it was draining into a small pond. I think it was right off the north of the camp ground, which ran directly into Nokay Lake.

"Q. How would the people pollute the lake?

"A. Through sanitation. I would say that's one factor.

"Q. I'm talking about the use of the lake as opposed to the sanitation.

"A. Well, that would be the biggest thing, I would say.

"Q. So in other words, your prime concern is sewage treatment facilities?

"A. Right.

"Q. Not the use of the lake itself, not the fishing?

"A. Well, then the safety angle would come in there—water skiers and boating.

"Q. But I'm trying to isolate what your chief concern is, and is it fair to say that your chief concern was quality of the water?

"A. That's right.

"Q. And that the adverse effect that the camp ground would have upon that lake would be through its sewage system; is that correct?

"A. That's right.

"Q. So that's your number one concern?

"A. Right."

The verified pleading of the intervenors, which was relied on by the commissioners and was made a part of the record on the motion to vacate in the district court, contains the following allegations:

"PLEADING IN INTERVENTION AS A PARTY

"PART I—PROCEDURAL MATTERS, JURISDICTION

"1.  Interveners are riparian owners on Nokay Lake. Interveners Hubenettes are fee owners abutting on the proposed commercial campground. The Hubenette's family purchased the cottage in 1950 and have been continuous summer residents since then. Intervener Greenhow owns and operates a family fishing resort on Nokay Lake.

"2.  Under Minn. Stat. 1971 Section 116B.09, now part of the Minnesota Environmental Rights Act, natural persons are empowered to intervene as a matter of right and as parties in this permit proceeding on the filing of this verified pleading with the Board of County Commissioners.

"3.  Interveners hereby assert and maintain that the captioned proceeding involves conduct that, if permitted, will cause or is likely to cause pollution, impairment, or destruction of the water and other natural resources within the State and within the vicinity of Nokay Lake, Crow Wing County, particularly recreational resources and quietude.

"4.  This pleading and brief are filed during the [pendency] of the captioned permit proceeding.

"PART II—ALLEGATIONS OF FACT

"5.  Nokay Lake is lake number 18-104 and is classified as a recreational development lake.

"6.  Lake 18-103 is classified natural environment.

"7.  The premises, where the proposed commercial campground abut on and form part of the shoreline of Nokay Lake and Lake 18-103, are legally described as Lot 3 and the North 1/2 of the Southeast Quarter of Section 13, Township 45 North, Range 29 West.

"8.  Nokay Lake has acreage of about 700 acres.

"9. The primary recreational use of Nokay Lake over the years has been as a fishing lake and that primary recreational use continues by the riparian owners, the public and the resorts. Fishing, rest, relaxation and peace and quiet have drawn owners and guests to this small lake year after year.

"10. About fifty families now use Nokay Lake for the purposes described above, such families being both owners and guests. Lake usage is approaching that point where the primary recreational use is being endangered by crowding at this time and without the proposed commercial campground.

"11. The proposed additional usage of about 110 families will approximately triple the crowding of present usage and, in the belief of the interveners, will introduce conflicting usages, particular speedboating and waterskiing.

"12. Disposal of the sanitary wastes for 110 families at one location without a treatment plant and within the surface drainage and ground water basin of two lakes is almost certain to have a material adverse effect on water quality and cause pollution. An internal memorandum of the Minnesota Pollution Control Agency confirming same states in full:

" 'January 24, 1973
Pollution Control Agency
(to) C. E. Carson (Deputy Director PCA)
(from) Mike R. DesPartes.

(re) Nokay Lake Campground referral from Brainerd District Representative

It seems that the proposed system will infiltrate into the groundwater and hence, the lake. To be more certain of the impact, perhaps to support a negative opinion on the proposed area, the height of the water table in the area should be verified and percolation tests conducted. Other questions that should be answered are whether the design capacity of the system was computed on a peak use basis or on some median figure, the seasonal aspect such as lake level, soil conditions etc. Finally, emergency

procedures may be required in case the system fails to function, especially during a period of peak use.

In view of the enclosed clippings on public reaction and the near-certain negative impact on groundwater and lake water quality, this does not seem to be an advisable disposal system. * * *'

"13. Quietude presently enjoyed by the interveners will be disrupted by loud noises from off-road vehicles used by campers on the grounds, which noise levels are not regulated by any law whatsoever.

"14. Interveners contend that their enjoyment of quietude and the general recreational purposes of their premises will be destroyed by the stream of traffic within 24 feet of their cabin, generated by a quantity of people twice the population of the entire lake with trundlings of camping trailers past their doorsteps when entering and exiting the campground. The threat to safety of six small children in intervener Hubenettes' family whose lakeshore and front porch are bisected by this drive are not considered here because law does not permit them to be raised in the context of this Pleading."

This record raises a multitude of facts from which the county board could have concluded that the proposed campground would have had an adverse effect on Nokay Lake. Plaintiff is asking for approval of a campground which could hold 400 people, many of whom will be using 700-acre Nokay Lake. This cannot help but have substantial impact on the lake. Coupled with plaintiff's allegations of arbitrary action and denial of these facts, the record presents genuine issues of material fact which should be resolved at trial on the merits, not by summary judgment. Rule 56.03, Rules of Civil Procedure.

The issue of adverse impact on Nokay Lake is clearly material in the action below because of § 116B.09 of the Minnesota Environmental Rights Act. That section provides:

"Subdivision 1. Except as otherwise provided in section 116B.10, in any administrative, licensing, or other similar pro-

ceeding, and in any action for judicial review thereof which is made available by law, any natural person residing within the state, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, or any partnership, corporation, association, organization or other legal entity having shareholders, members, partners, or employees residing within the state shall be permitted to intervene as a party upon the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct that has caused or is likely to cause pollution, impairment, or destruction of the air, water, land or other natural resources located within the state.

"Subd. 2. In any such administrative, licensing, or other similar proceedings, the agency shall consider the alleged impairment, pollution, or destruction of the air, water, land, or other natural resources located within the state and no conduct shall be authorized or approved which does, or is likely to have such effect so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare and the state's paramount concern for the protection of its air, water, land, and other natural resources from pollution, impairment, or destruction. Economic considerations alone shall not justify such conduct.

"Subd. 3. In any action for judicial review of any administrative, licensing, or other similar proceeding as described in subdivision 1, the court shall, in addition to any other duties imposed upon it by law, grant review of claims that the conduct caused, or is likely to cause pollution, impairment, or destruction of the air, water, land, or other natural resources located within the state, and in granting such review it shall act in accordance with the provisions of sections 116B.01 to 116B.13 and the administrative procedures act."

Under subd. 3, the district court had a duty to fully examine on review the verified allegations of the intervenors herein which

set forth specific facts relating to the potential impairment of Nokay Lake.

The district court attempts to circumvent the statute by attacking the allegations in the verified pleading on the ground that they are not sufficient as affidavits to meet the requirements of Rule 56.05, Rules of Civil Procedure. Neither the language of that rule nor any decision of this court supports such an attack. The verified pleading is clearly made on the personal knowledge of the property owners; it sets forth facts concerning the number of families now using the lake, present noise levels, present uses of the lake, that are relevant and admissible in evidence; it shows that they are competent to testify to these matters; and it presents specific facts regarding the environmental impact of the proposed campground on Nokay Lake.[3] The summary judgment rule does not require that the intervenors specifically allege competency and personal knowledge at every step in their pleading—their status as property owners and inhabitants of the area is sufficient to establish competency and personal knowledge as to many of the facts alleged. From the depositions and the pleading of the intervenors it is clear that the county board had before it facts which tended to show an adverse impact on Nokay Lake through overcrowding, improper and inadequate sanitation, an inadequate access road, and many other factors. These facts clearly revealed genuine issues for trial, and should not have been so lightly dismissed by the district court.

Summary judgment is not a trial of issues of fact. It is a proceeding designed to determine if issues of fact exist. Vieths v. Thorp Finance Co. 305 Minn. 522, 232 N. W. 2d 776 (1975); Ahlm v. Rooney, 274 Minn. 259, 143 N. W. 2d 65 (1966); Abdal-

---

[3] These facts are sufficient under this court's decision in County of Freeborn v. Bryson, 297 Minn. 218, 210 N. W. 2d 290 (1973), to make a prima facie case that the campground would materially and adversely affect the environment. A lake is a protectable natural resource. Alleged overcrowding and inadequate sanitary facilities could pollute or impair this resource. 297 Minn. 228, 210 N. W. 2d 297.

362

lah, Inc. v. Martin, 242 Minn. 416, 65 N. W. 2d 641 (1954) ; Willmore v. Willmore, 273 Minn. 537, 143 N. W. 2d 630, certiorari denied, 385 U. S. 898, 87 S. Ct. 202, 17 L. ed. 2d 130 (1966). Substantial issues of fact obviously exist here. Whether we review the district court's decision as one granting summary judgment or as one refusing to vacate summary judgment, we think it was in error.

The judgment is reversed and the case remanded for a trial limited to the issue of adverse environmental impact on Nokay Lake, because this was the only legally sufficient reason for revocation given by the county board at the time of revocation.

Reversed and remanded.