**EARTHBURNERS, INC., Respondent,**

v.

**COUNTY OF CARLTON,**
**Petitioner, Appellant.**

No. C5–93–110.

Supreme Court of Minnesota.

March 18, 1994.

James M. Ross, Jr., Carlton, for appellant.

Robert C. Maki, Duluth, for respondent.

Carla Heyl, League of MN Cities, Shoreview, for amicus curiae.

## OPINION

COYNE, Justice.

We granted the petition of Carlton County to consider whether the proceedings of its county board were in compliance with Carlton County, Mn. Ordinance 6, § 20 (Aug. 1, 1978), with respect to Earthburners, Inc.'s application for a conditional use permit. Because we conclude that the proceedings were deficient, we reverse and remand for the board's reconsideration of the application.

Earthburners is interested in operating a "soil roaster" in Carlton County on leased land currently used as a gravel pit. The facility is designed to heat dirt collected from service station sites in order to remove the oil and gas in the soil. As the soil dries, a "drop out box" and "baghouse filter system" catch emissions. Once purified, the soil may be mixed with gravel for use in road construction and repair or, if further refined, used for "common fill." Earthburners applied to the Minnesota Pollution Control Agency for, and was granted, an air emission permit on December 17, 1991.

Thereafter, on January 7, 1992, Earthburners applied to Carlton County for a conditional use permit. Bruce Benson, county zoning administrator, recommended approval with certain specified conditions. The county planning commission then held a public hearing on February 5 to consider, among other matters, Earthburners' application. Terry Anderson, Earthburners' president, and the company's attorney, Robert Maki, were present at the hearing, during which several local residents offered complaints about lack of notice and insufficient information, while others expressed their fears about the project's impact on the area because of increased truck traffic, possible pollution and danger to children. One resident was concerned that the location of the facility would result in a devaluation of her property for its upcoming

sale. None of the residents present made detailed statements, but an attorney read a letter submitted by a non-resident landowner, Professor Andrew McFarland, who, after extensive study of air and ground pollution, offered general criticisms. The commission unanimously voted to recommend denial of the application.

Two days after the planning commission hearing, Earthburners provided the county board with a detailed written response to the issues and concerns which had been raised, in which the company's president assured the board that Earthburners "welcomes close supervision" and conditions on the permit's issuance. He recommended a test period and offered specific remedies to minimize soil spillage, excessive dust and other problems identified by the objecting landowners. Earthburners also agreed to operate the soil roaster only on a 40–acre tract on the leased land. Presumably, the concessions proffered by the permit applicant were intended to be incorporated in the ultimate permit, if issued, but it is unclear whether a formal amendment of the application took place or whether the county zoning administrator concurred.

The Carlton County Board considered the permit application on February 11. While there were no scheduled speakers, the chair apparently anticipated another lengthy hearing and took steps to limit discussion:

> [W]e have lots of visitors, * * * * We don't want to go over another meeting like we had the other night * * * * [W]e had 150 people there, we spent in excess of 2 hours dealing with both sides of the issue, mostly the [objections,] and I don't think that it is necessary [to] go through that again * * * * [W]hat I would like to do, if this is acceptable with the Board, is to have each side * * * speak for no more than 5 minutes * * * [and then] have the Board members ask questions.

Maki offered to "let the opposition go first" so he could answer their questions. One resident again complained of anticipated excessive vehicle traffic and possible soil spillage and the non-resident landowner, through counsel, reiterated his concerns. Maki responded to each.

The chair first suggested that a postponement of the issue might be in order, but then moved the proceedings forward, inviting questions from board members who had not attended and voted at the planning commission hearing. After a general discussion, one board member complained of insufficient notice of the hearings and suggested that more discussion should have been required to fully inform the residents. Earthburners' representative acknowledged the need to inform the neighboring landowners and respond to their inquiries:

> I am more than happy to schedule whatever public hearings to go to the [local] Township, to get all of the issues on the table and address. I think your concerns are proper, it's not fair for people not to know what's coming and if this Board wishes, we will take some more time, we will hold a meeting in the Township and we will address all concerns. [We're] not trying to ram it through * * * * [The goal was to] take issues raised [at the Planning Commission meeting] and give you all the information I could gather. My goal is not to walk out of here with a permit today. It is to give you answers to every question [that has been raised to this point] * * * * [M]aybe there are more questions [and] people need more time. I have no problem with that.

The following comment from the board chair demonstrates the inadequacy of the proceedings and the interlocutory nature of the decision which later issued:

> [T]his whole thing is much more complex than we have the time to give it. * * * * [t]here are many questions to be answered and it is going to take more time than we have * * * today * * * * [M]y recommendation * * * would be to accept the recommendation of the Planning Commission and as we get smarter down the line * * * Earthburners [could] reapply for a permit.

Despite what appeared to be an indication of a willingness to either postpone or continue the matter so that more information could be provided or Earthburners could reapply or supplement its application, the board voted unanimously to accept the planning commission's recommended denial. The only stated

reason for the denial was "public testimony presented in opposition."

Rather than resubmitting its application, Earthburners sought a declaratory judgment that the county board acted arbitrarily when it denied the permit. The district court ordered issuance of the conditional use permit, concluding that the board's basis for denial "is legally insufficient." A split decision of the court of appeals affirmed the district court's declaration. *Earthburners, Inc. v. County of Carlton,* 504 N.W.2d 66 (Minn. App.1993). Relying upon *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 415–16 (Minn. 1981), the dissenting opinion argued that the county board should be afforded an opportunity at trial to rebut the presumption of arbitrariness of its decision and demonstrate a rational basis for it with evidence and testimony limited in scope to those issues raised before the planning commission and county board. It must be pointed out that neither the district court nor the court of appeals defined the scope of the conditional use permit their decisions mandated.

Carlton County adopted a detailed ordinance to govern the consideration and disposition of conditional use permit applications. Permitted conditional uses in this district include, but are not limited to, "solid waste disposal sites" and "dumping grounds", "subject to the provisions of Sec. 20, Conditional Use Permits." Carlton County, Mn., Ordinance 6, §§ 8–9 (Aug. 1, 1978). Section 20 provides in pertinent part as follows:

> Conditional use permits shall be approved by the County Board of Commissioners based on recommendations by the County Planning Commission for any and only the uses or purposes for which such permits are required or permitted by [this ordinance].
>
> * * *
>
> No conditional use shall be approved by the County Planning Commission unless said Commission shall find:
>
> 1. That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity * * * nor substantially diminish and impair property values * * *.

> 2. That the [use] will not impede the normal and orderly development [of the area].
> 3. [That] adequate utilities, access roads, drainage and other necessary facilities * * * are being provided.
> 4. That adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use.
> 5. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration, so that none of these will constitute a nuisance * * *.

*Id.* § 20, subds. 1, 4. The trial court and court of appeals determined that on the record, Earthburners' application satisfied the criteria of the ordinance and that the conditional use permit must issue.

In our view, these proceedings and the board's decision are similar to those we addressed in *White Bear Rod and Gun Club v. City of Hugo,* 388 N.W.2d 739 (Minn.1986), where the gun club sought to amend and expand the special use permit for its shooting range. We concluded that the city council's denial decision lacked specific findings or explanations to facilitate any judicial review:

> In denying the gun club's application, the city council cryptically listed nine "reasons" * * * * These so-called reasons are nothing more than a list of the council's sources of information and tell a reviewing court nothing about how the council may have evaluated or used this information. While the city council was not required to prepare formal findings of fact, it was, "at a minimum," required to "have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion."

*Id.* at 742 (footnotes omitted) (citing *Honn,* 313 N.W.2d at 416). Because of the wholly inadequate record, in *White Bear Rod and Gun Club* we remanded to the council for its preparation of appropriate findings to support its decision.

The proceedings before and decision of the county board here are even less adequate than those recorded in *White Bear Rod and*

*Gun Club.* The county argues that its board's justification for denial—the bald reference to "public testimony in opposition"—should be considered in the context of each board member's oral statements and questions and the substance of the residents' testimony. It urges the court to consider something akin to the "cumulative effect" of the record to sustain the board's decision. However, the most obvious conclusion from such a generous reading of the record is that board members, residents and even the applicant Earthburners' counsel were unprepared for a final determination of the board on February 11—that there remained unanswered questions, that more time was needed both for consideration of the issue and for testimony and that there was no expectation of finality at that hearing. Under these circumstances, we are of the view that the decision was premature, not necessarily arbitrary, and it is that characterization which requires a remand to the county board for its renewed consideration of the application.

In the proceedings on remand, the board must articulate the reasons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance. If the permit is granted, the order must demonstrate the board's conclusion that the applicant has satisfied each of the five conditions for approval. Carlton County, Mn., Ordinance 6, § 20, subd. 4. If the application is denied, the order must articulate the board's specific basis for the denial, i.e., an explanation of the applicant's failure to satisfy the ordinance criteria. *See, e.g., Swanson v. City of Bloomington,* 421 N.W.2d 307 (Minn.1988) (subdivision request properly denied; city council made specific findings under zoning ordinance). Along with a clearly articulated rationale for its decision, specific reference to the local ordinance is essential to facilitate effective judicial review.

As with the lower courts, we have been reluctant to allow local boards an opportunity after the fact to substantiate or justify earlier decisions. *See Metro 500, Inc. v. City of Brooklyn Park,* 211 N.W.2d 358, 362 (Minn. 1973). However, where, as here, the board has failed to discharge its responsibilities in connection with this application, we are com-

pelled to offer it the opportunity to do so and to develop a record to allow meaningful appellate review. However, to prevent any unfairness to the applicant, the board must confine its inquiry to those issues raised in earlier proceedings before the planning commission and county board while allowing adequate opportunity for a meaningful discussion of those issues.

Both *Honn,* 313 N.W.2d at 416, and *Swanson,* 421 N.W.2d at 312–13, reflect our concern that decisions be deliberative, fair and well-documented. The effect of our decision is to reopen these proceedings with proper notice, to facilitate full discussion by all interested parties by providing the applicant ample opportunity to disseminate information concerning its proposed facility and its operation so that board members and other interested parties are afforded adequate preparation time, and ultimately to allow the board to articulate the reasons for whatever action it takes and, in the event it approves the application, to define the scope and terms of the conditional use permit.

Reversed and remanded to the county board for its reconsideration of the permit application.