**In the Matter of Russ LIVINGOOD.**

No. C2–98–262.

Supreme Court of Minnesota.

June 17, 1999.

Thomas J. Simmons, Renville County Attorney, Benjamin H. Frisch, Assistant Renville County Attorney, Olivia, for relator/appellant.

Gary W. Koch, Richard F. Prim, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for respondent.

## OPINION

RUSSELL A. ANDERSON, J.

Respondent Russell Livingood applied to appellant Renville County for a conditional use permit to expand his confinement hog facilities. The county denied the permit, and Livingood filed a writ of certiorari in the court of appeals. The court of appeals reversed the decision of the county, concluding that the county lacked sufficient evidence to support the denial, and remanded the case with directions to issue the permit. The county then filed a petition for further review with this court, requesting that the remand be modified to allow the county to articulate its basis for the denial. We granted the petition and modified the remand as requested by the county. Livingood then filed a petition for rehearing indicating that the county intentionally failed to record its proceedings, contradicting the county's earlier representations that the lack of a recording was due to an equipment malfunction. We

granted the petition for rehearing and vacated our prior order, and must now decide if the court of appeals erred in remanding the case with specific directions to issue the permit.

Because of the minimal record before us, we have a limited set of facts to consider. Livingood has resided at his present farm in Renville County since 1972, and has continuously raised hogs on his farm as his family's primary source of income since that time. Livingood is currently operating his feedlot in compliance with a permit from the Minnesota Pollution Control Agency (MPCA). On September 29, 1997, Livingood applied to the county for a conditional use permit to allow modernization and expansion of his feedlot facility. Livingood sought to replace two existing barns and two outside feeding floors with two deep-pitted, power-ventilated barns. The proposed facility would accommodate up to 960 animal units, or 2400 full size hogs.[1] The MPCA issued a "draft" Certificate of Compliance approving Livingood's proposed facility.

Livingood presented his proposal at the county's planning commission meeting on November 18, 1997. As required by the planning commission rules, the meeting was recorded on videotape and a transcript was later made for appellate review. Livingood described his proposal, and stated that the new facility would reduce odors by eliminating the need for outdoor feedlots. Livingood told the commission that "[a]nybody who knows anything about the hog business knows that a pitted barn is going to smell less than outdoor lots even with more animal units." Livingood also disputed the county's public notice that indicated that only 240 animal units currently exist at the site, meaning the permit would allow an additional 720 animal units. Rather, Livingood stated that he has his-

torically had far more than 240 animal units, and that the permit would result in an increase of only 140 animal units.

Kristi O'Neill spoke at the meeting in opposition to the permit. A neighbor of Livingood's, she believed that the new facility would be harmful to her son, Barry, who is in poor health. O'Neill stated that she had letters from Barry's three doctors expressing their opinion that strong odors would create additional health risks for Barry. The chairman indicated on the record that he had received O'Neill's letters. At the end of the meeting, the planning commission voted to recommend denial of the permit based on section 4.032 of the Renville County Zoning Ordinance. Sections 4.03 and 4.032 of the ordinance provide that:

> No Conditional Use Permit shall be recommended by the County Planning Commission and no Conditional Use Permit shall be granted by the Board of Commissioners unless it be determined:
>
> * * * *
>
> That it will not, under the circumstances of the particular case, be detrimental to the health, safety, morals and welfare of the persons residing in and working in the area.

On December 16, 1997, the Renville County Board considered Livingood's application, and issued an order denying his request for a conditional use permit. The board meeting was not recorded, so no transcript exists detailing the information presented to the board. The board's order did give a brief description of the proposal, and denied the permit "[b]ased on health risks," citing section 4.032 of the county ordinance.

Livingood filed a writ of certiorari in the court of appeals on February 11, 1998,

---

1. An animal unit is a unit of measure used to compare production of animal manure. Section 1.9 of the Renville County Zoning Ordinance measures a swine over 55 pounds as 0.4 animal units. Thus, each animal unit represents 2.5 full size hogs.

challenging the denial of the permit as arbitrary and capricious. The court of appeals then ordered the county to submit the record, exhibits, and proceedings relating to the denial of the permit so the court could review the county's decision. The county responded that "[n]o transcript [of the county board hearing] is available. The meeting was audio taped but there was a malfunction with the equipment so no tape is available." The county also failed to submit the three doctors' letters regarding the health risks to Barry O'Neill at this time.

In its brief to the court of appeals, the county referred to the three doctors' letters but stated "[t]he doctors' letters are not part of the record, however, they were submitted by the O'Neils [sic] to the Renville County Board on an earlier date when another neighbor sought to expand their facility. Therefore, the Board was aware of what they said." The county's brief further stated that "[m]eetings of the Renville County Board are recorded electronically, however, the recording system malfunctioned on the date of the relevant meeting and no tape is available with which to construct a transcript."

Despite these deficiencies in the record, the county argued to the court of appeals that the record supported the decision of the board: "Unfortunately, the recording system normally utilized for the meetings of the Renville County Board malfunctioned and no transcript is available. However, the record that is available still more than amply supports the Board's decision." The county's brief concluded that "[t]he record makes it clear that the conditional use permit application was rejected because of health concerns for Barry O'Neil [sic] and others living near the site, water pollution, and the potential for an odor nuisance."

Following oral argument in the court of appeals, the county filed a motion "to cor-

rect an error of omission" and add the letters to the record. In support of its motion, the county's assistant attorney filed an affidavit indicating that Kristi O'Neill sent copies of the doctors letters to the planning commission and county board members, but that there was no indication that the letters "were placed into the file."

The court of appeals denied the county's motion to supplement the record, concluding that the motion was untimely and not justified. *See In the Matter of Russ Livingood,* No. C2-98-262, 1998 WL 531759, at *2–*3 (Minn.App. August 25, 1998). Although the court of appeals denied the county's motion, the court noted that it reviewed the letters and "conclude[d] that consideration of the letters would not change our decision in this case." *Id.* at *3. The court of appeals' opinion reviewed the merits of the writ, and concluded that the county was not justified in denying Livingood's permit:

> We conclude that the record contains insufficient evidence that Livingood's proposal presents a risk to the health of O'Neill's son to justify denying the permit on that basis. We therefore reverse the county board's decision and remand with directions to issue the permit, subject to the imposition of reasonable conditions.

*Id.* at *5. Thus, the court of appeals remanded the case to the county board with specific directions to issue the permit.

The county filed a petition for review with this court on September 21, 1998. The county's petition for review admitted that the record did not adequately support its decision, but argued that the appropriate remedy is to allow the county to clarify and supplement the record to provide a basis for its decision:

> Here the explanation for the decision was too cryptic. There was very little in the record supporting the decision. The case should be remanded to allow the

inclusion of the letters in the record as well as for the Board to provide an explanation of its rationale for denying the permit.

We granted the petition for review in an October 29, 1998 order, summarily "modifying the remand to allow the board to articulate the information considered and the reasons for its decision." Our order specifically noted that there was no record of the board's decision "because of a recording system malfunction."

Livingood then filed a petition for rehearing, based in part on our reliance on the county's misrepresentations regarding the equipment malfunction. Livingood learned that the lack of a recording was not the result of an equipment malfunction; rather, contrary to representations made to this court and the court of appeals, the county does not typically record its board meetings. Livingood learned that only one of the 96 regular county board meetings since January 1, 1997, was actually recorded. As the county's Deputy Auditor admitted: "It's kind of embarrassing, but we don't normally tape the regular board meetings." Livingood noted that the room where the board meets is equipped with microphones, but speculated that the county stopped making recordings because such recordings were used against the county in two previous lawsuits.

In its response to the petition for rehearing, the county admitted that Livingood's allegations were true, and that the Assistant County Attorney "was given mi-

sinformation" and made "a representation of data which now proves to be false." We then vacated our October 29, 1998 order and scheduled the case for full briefing and argument.

## I.

We must now determine the appropriate remedy, where the county first argued to the court of appeals that the record was adequate to support its decision, then claimed to this court that the record was inadequate due to an equipment malfunction, and now admits that county board meetings are not typically recorded. The county requests a remand to allow it to make a more adequate record and articulate its findings and conclusions. Livingood argues that the decision of the court of appeals, remanding the case with specific directions to issue the permit, should be affirmed.

 We are not being asked to review the county's decision to deny the permit.[2] The parties do not dispute that section 4.032 of the Renville County Zoning Ordinance would allow the county to deny a special use permit if the permit would "be detrimental to the health * * * of the persons residing in and working in the area." However, the county has admitted to this court, in both its petition for review and its appellant's brief, that it gave an inadequate explanation for its decision and that the record does not support its decision.[3] Thus, we must only decide if the case should be remanded with directions

---

**2.** City council decisions, and likewise county board decisions, on special use permits are quasi-judicial, and thus may be reviewed under a writ of certiorari. *See White Bear Rod and Gun Club v. City of Hugo,* 388 N.W.2d 739, 741 (Minn.1986).

**3.** Typically, when a quasi-judicial body such as a county board denies a permit, the reviewing court "should, of course, confine itself at all times to the facts and circumstances developed before that body. If the decision-making body does not state reasons contempora-

neously with its action, its decision will be prima facie arbitrary, and it will bear the burden of persuading the reviewing court that the facts and circumstances before it gave rise to legally sufficient reasons for denial or revocation." *Corwine v. Crow Wing County,* 309 Minn. 345, 352, 244 N.W.2d 482, 486 (1976). Conversely, "[i]f the decision-making body does state reasons, review will be limited to the legal sufficiency and factual basis for those reasons." *Id.* In the present case, the county now admits to this court that it did not provide an adequate basis for its decision, and

requiring the county to issue the permit, or with directions allowing the county to compile a record and provide an adequate basis for its denial.

The county now raises two arguments in support of its claim. First, it argues that the court of appeals failed to follow our decision in *Earthburners, Inc. v. County of Carlton,* 513 N.W.2d 460 (Minn.1994) by ordering that the permit be issued rather than allowing the county to develop a record and articulate its findings and conclusions. Second, the county argues that the court of appeals erred in denying the county's motion to add the three letters to the record.

## II.

■ The county argues that the court of appeals erred in remanding the case with directions to issue the permit. The county does not dispute the court of appeals' conclusion that the record does not support the county's decision. However, the county argues that the court of appeals failed to follow precedent when it ordered that the permit be issued instead of allowing the county to develop an adequate record to support its decision. In support of its argument, the county relies primarily on our opinion in *Earthburners.* In that case, Earthburners sought a conditional use permit from Carlton County to operate a soil roaster. *Earthburners,* 513 N.W.2d at 460. The Carlton County Board summarily denied the permit following a public hearing, citing "public testimony presented in opposition." *Id.* at 461–62.

We held that Carlton County's decision to deny Earthburners a permit was made on an inadequate record. *Id.* at 462–63. However, we decided to remand the case and allow the board to "articulate the rea-

sons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance." *Id.* at 463. We recognized our historical "reluctan[ce] to allow local boards an opportunity after the fact to substantiate or justify earlier decisions." *Id.* (citing *Metro 500, Inc. v. City of Brooklyn Park,* 297 Minn. 294, 300, 211 N.W.2d 358, 362 (1973)). However, under the facts of the case, we held that the Carlton County's decision to deny Earthburners a permit was "premature." *Id.* We concluded:

> [T]he most obvious conclusion from such a generous reading of the record is that board members, residents and even the applicant Earthburners' counsel were unprepared for a final determination of the board on February 11—that there remained unanswered questions, that more time was needed both for consideration of the issue and for testimony and that there was no expectation of finality at that hearing. Under these circumstances, *we are of the view that the decision was premature, not necessarily arbitrary, and it is that characterization which requires a remand to the county board for its renewed consideration of the application.*

*Id.* (emphasis added).

Thus, in *Earthburners,* the county's decision was premature and failed to reference a relevant provision of the zoning ordinance on which to base a denial. Renville County attempts to analogize the present case to *Earthburners.* However, the county's argument to this court is undermined by its arguments made to the court of appeals.

The county now argues to this court that "the record is inadequate" and thus the case should be remanded to allow the county to "develop a record." However,

thus the burden of proof would rest with the county had it challenged the court of appeals

decision that the county had insufficient evidence to base a denial of the permit.

the county had previously argued to the court of appeals that "the record that is available still more than amply supports the Board's decision."[4] The county makes little attempt to argue to this court that its decision was premature, and never made such a representation to the court of appeals. Further, as the county acknowledges, its decision did rely on the proper provision of the zoning code, unlike the decision of Carlton County in *Earthburners*.

The county also attempts to analogize the present case to the facts in *White Bear Rod and Gun Club v. City of Hugo*, 388 N.W.2d 739 (Minn.1986). In *White Bear Rod and Gun Club*, this court remanded the case to the City of Hugo "to prepare appropriate findings for its decision on the gun club's application for an amendment to its special use permit." *Id.* at 742. Such a remand was appropriate because the court was "left in the dark as to what the city council made of all [the] evidence." *Id.* at 742 n. 4. The county's attempt to analogize the present case is again undermined by its representations to this court and its actions, as the county admits that "this Court is not completely in the dark as to the Board's thinking."

■ The remands ordered in *Earthburners* and *White Bear Rod and Gun Club* are merely exceptions to the general principle that when a governmental body denies a permit with such insufficient evidence that the decision is arbitrary and capricious, the court should order issuance of the permit. *See C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 328 (Minn.1981); *see also Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340–41 (Minn.1984). As the facts of the present case are not analogous to either *Earthburners* or *White

*Bear Rod and Gun Club*, we must apply the standard remedy and remand the case with specific directions to issue the permit.

■ Governmental bodies must take seriously their responsibility to develop and preserve a record that allows for meaningful review by appellate courts. Instead, the county has misrepresented the reason for the lack of a transcript and has reversed its position on the adequacy of the record. To reward the county's actions and legal strategy with a remand allowing it to again deny Livingood's permit would only encourage similar behavior by other local governments. The county must be held to its representations to the court of appeals that the record was complete. There is no basis to grant a remand to allow the county another chance to build a record to support its denial of the permit. Instead, we affirm the decision of the court of appeals and remand the case to the county board with directions to issue the permit, subject to the imposition of reasonable conditions.

### III.

■ Having determined that the county must issue the permit, we need not address the county's argument that the court of appeals wrongfully denied its motion to supplement the record and include the letters from the three doctors. However, we note that the county has not properly argued this issue. Because the county failed to include the letters with the "trial court" (in this case the Renville County Board), the decision to consider the letters rests with the appellate court:

Normally, this court will not consider papers not filed in the trial court. Minn. R. Civ.App. P. 110.01. However, when the evidence is documentary evidence of

4. The County realizes that it is changing its view of the record in its brief to this court: "The law of this case is that the record is inadequate. The Court of Appeals decision is persuasive in this regard. * * * [T]he County was persuaded by the Court of Appeals' reading of the case law, and the record in this case, that the record is insufficient."

a conclusive nature (uncontroverted) which supports the result obtained in the lower court, we may do so.

*In re Real Property Taxes for 1980 Assessment; Village Apartments v. State,* 335 N.W.2d 717, 718 n. 3 (Minn.1983) (citing *Mattfeld v. Nester,* 226 Minn. 106, 122, 32 N.W.2d 291, 304 (1948); *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583–84 (Minn.1977)).

 The term "may" indicates that the court of appeals was not required to consider the letters, but rather had the discretion to do so. While the county has provided a brief argument in favor of considering the three letters, it has failed to provide any argument that the court of appeals abused its discretion in not considering the three letters. Further, the county has failed to establish that the letters have conclusive value, as the letters do not consider Livingood's uncontroverted statement that the new facility will create less odor.

 In addition, the county should have attempted to supplement the record with the letters in a more timely fashion. The county failed to properly submit the three letters when the court of appeals ordered the county to submit the record, exhibits, and proceedings relating to the denial of the permit so the court could review the county's decision. At a minimum, it would have been more appropriate to motion the court of appeals to supplement the record at some point prior to oral argument. Instead, the county only attempted to supplement the record with the three letters following oral argument in the court of appeals and before submitting its brief to this court. Litigants must make every attempt to supplement the record in a timely fashion, and appellate courts may use their discretion to not consider untimely supplemental documents. Thus, we see no basis for holding that the court of appeals erred in denying the coun-

ty's motion to supplement the record following oral argument.

Affirmed.

PAGE, J. took no part in the consideration or decision of this case.

PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent. I would remand this matter to the Renville County Board of Commissioners for the limited purpose of permitting the board to articulate the information it considered and the reasons for its decision. I agree with our general rule that we are "reluctant to allow local boards an opportunity after the fact to substantiate or justify earlier decisions." *Earthburners, Inc. v. County of Carlton,* 513 N.W.2d 460, 463 (Minn.1994). I further agree with the majority that reaching a resolution of this case is complicated by the fact that the county failed to record its proceedings and then compounded this problem by failing to correctly articulate the reason why the proceedings were not recorded.

Nevertheless, two wrongs do not make a right. It is wrong for us, based on the record before us, to summarily order the board to issue the conditional use permit. Two properly constituted local boards, the Renville County Planning Commission and the Renville County Board of Commissioners, voted to deny the permit based upon "health risks." Thus, we do know that these boards were concerned about health risks associated with the activity to be permitted under this permit. But here, as in *White Bear Rod and Gun Club v. City of Hugo,* 388 N.W.2d 739, 742 n. 4 (Minn. 1986), we are "left in the dark" about the specific reasons why the board concluded that health risks mandated denial of the permit. Under these circumstances, it is critical for us to know what those reasons were before ordering that the permit be issued. Therefore, we should remand this matter to the board for the limited purpose of permitting the board to articulate

the information it considered and the reasons for its decision.