DAVID CURRY AND ANOTHER v. MAURICE
YOUNG AND OTHERS.
CITY OF MINNEAPOLIS, APPELLANT.

173 N. W. (2d) 410.

December 26, 1969—No. 41678.

*Keith M. Stidd,* City Attorney, and *Jerome F. Fitzgerald,* Assistant City Attorney, for appellant.

*Sherman Bergstein,* for plaintiff respondents.

*G. D. Giancola,* for defendant respondents.

KNUTSON, CHIEF JUSTICE.

Defendant city of Minneapolis appeals from an order denyings its motion for summary judgment in this action brought by plaintiffs as owners of the southerly portion of Lot 14, Block 3, Lowry's First Subdivision of Columbia Heights, to compel the city to grant a setback variance from a zoning ordinance and a building permit to enable plaintiffs to build a dwelling house on the lot.[1] The zoning ordinance, which was adopted in 1963, requires a setback of 25 feet from the street.

The trial court found that plaintiffs' lot, in the absence of a variance, would be unusable for any purpose and granted the relief plaintiffs sought, issuing an order requiring the "City of Minneapolis, through its appropriate agents and employees, to forthwith issue to plaintiffs a building permit for the construction of a single family dwelling unit of at least 24 feet by 40 feet dimensions plus a one car garage" on the premises. The court did not specify the exact setback which the variance should provide for, but simply provided that a dwelling of the size stated above should be permitted, leaving it to the city what variance should be granted so as to permit construction of a building of that size.

The history of the ownership of the lot plaintiffs own is of some significance in determining the issues involved in this

---

[1] Plaintiffs' claims against the other defendants are not in issue on this appeal.

appeal. In 1936 one John Tracy owned all of Lot 14. That year he conveyed the northerly part to Minnesota Federal Savings & Loan Association. In 1941 he conveyed the southerly part, which is involved here, to one Carl Edlund, who transferred it to the Carland Company. In September 1944 Minnesota Federal transferred the northerly part to Mr. and Mrs. Maurice Young. In October 1945 the Carland Company conveyed the southerly part to Mr. and Mrs. Young, so that they then became owners of the entire lot and were such when the zoning ordinance was adopted in 1963. In October 1966 Mr. Young transferred the northwesterly part of the lot to one Richard Phaneuf, and in June 1967 the Youngs transferred the southerly part of the lot to plaintiffs, who have been the owners since that time.

When the lot was originally divided, a deed for the southerly part was duly recorded. While the metes and bounds descriptions of the lots are not important, the southerly portion of the lot is 42.6 feet fronting on Architect Avenue, 127.9 feet fronting on Columbia Boulevard, 32.4 feet at the rear lot line and 130.6 feet adjacent to the northern portion of Lot 14. The result is that if the zoning-ordinance setback is adhered to plaintiffs could build a structure only 11.6 feet wide on the side closest to Architect Avenue, and 6 feet wide on the other side. The structure could be 40 feet long. Plaintiffs seek a variance from the setback requirement from 25 feet to 7 feet which, if granted, would permit building a structure 24 feet by 40 feet.

Prior to purchasing the property, plaintiffs received assurances from Minneapolis city employees that a setback variance could be obtained. It does not appear from the record who these employees were, but apparently they were members of neither the board of adjustment nor the city council.

The board was established under Minn. St. 462.354, subd. 2, which reads in part:

"The governing body of any municipality adopting or having in effect a zoning ordinance or an official map shall provide by ordinance for a board of appeals and adjustments. The board

shall have the powers set forth in section 462.357, subdivision 6 and section 462.359, subdivision 4. * * *

"In any municipality where the council does not serve as the board, the governing body may, except as otherwise provided by charter, provide that the decisions of the board on matters within its jurisdiction are final subject to judicial review or are final subject to appeal to the council and the right of later judicial review or are advisory to the council."

It would seem, from reading the statute and the city charter, that under the plan established by the city the decision of the adjustments board is advisory only.

A hearing was held by the board at which numerous people appeared, most of whom objected to the granting of the variance. On November 16, 1967, the board advised the city council that the variance should be granted. On November 21, 1967, a hearing was held by the zoning and planning committee of the city council to consider plaintiffs' request. Plaintiffs were not notified of this hearing and all those who appeared objected to the granting of the variance. The city then denied the application.

The Minneapolis zoning ordinance authorizes variances if the board of adjustment makes six specific findings. Article VI, Paragraph 6c, contains the following provisions:

"The Board of Adjustment shall not vary the regulations of this Ordinance, as authorized in this Article VI, Paragraph 6a above, unless it shall make findings based upon the evidence presented to it in each specific case that:

"(1) Because of the particular physical surroundings, shape, or topographical conditions of the specific parcel of land involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience if the strict letter of the regulations were to be carried out,

"(2) the conditions upon which a petition for variation is based are unique to the parcel of land for which the variance is

sought, and are not applicable, generally, to other property within the same zoning classification,

"(3)   the purpose of the variation is not based exclusively upon a desire to increase the value or income potential of the parcel of land,

"(4)   the alleged difficulty or hardship is caused by this Ordinance and has not been created by any persons presently having an interest in the parcel of land,

"(5)   the granting of the variation will not be detrimental to the public welfare or injurious to other land or improvements in the neighborhood in which the parcel of land is located, and

"(6)   the proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion of the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood."

While the board of adjustment did not make specific findings on all of these standards, it stated:

"Your Committee finds that the requirement of a front yard on Columbia Boulevard would make the subject property unuseable and that a hardship does exist under the terms of the Zoning Ordinance. Your Committee finds further that the relief sought is the minimum relief required in order to use the property."

Article VIII, Section A, Paragraph 4b, of the zoning ordinance provides:

"In any Residence District *on a lot of record* on the effective date of this Ordinance, a single-family dwelling may be established regardless of the size of the lot, provided that all other requirements of this Ordinance are met." (Italics supplied.)

Article III, Section B, Paragraph 64, defines a lot of record as follows:

"A 'lot of record' is a lot which is part of the subdivision, the plat of which has been recorded in the office of the Register of Deeds; *or a parcel of land, the deed to which was recorded in the office of said Register of Deeds prior to the adoption of this Ordinance.*" (Italics supplied.)

The city claims, among other things, that the southerly portion of Lot 14 is not a lot of record under this definition. It argues that when the Youngs acquired both parcels, even though there had been a division, they became reunited and the whole lot was one lot of record. The board of adjustment felt that plaintiffs' lot alone was a lot of record. The court has so found, and originally the city stipulated to that fact, but apparently it withdrew the stipulation when it realized that the stipulation might be conclusive against it.

The city devotes much of its brief to an argument that mandamus is not the proper procedure for reviewing a decision of the city council in a matter of this kind. It claims that plaintiffs may not seek review by mandamus but must proceed by certiorari.

Mandamus was abolished for a time under Rule 81.01(2), Rules of Civil Procedure. See, 254 Minn. supp. p. 77. The remedy formerly available under mandamus remained by petition. State ex rel. Stubben v. Board of County Commrs. 273 Minn. 361, 141 N. W. (2d) 499; Marine v. Whipple, 259 Minn. 18, 104 N. W. (2d) 657; Scoles v. Hurd, 275 Minn. 569, 148 N. W. (2d) 164. The abolition of the writ of mandamus caused nothing but confusion,[2] so it was readopted in later amendments to our rules. See, Rule 81.01(2), Rules of Civil Procedure, effective February 1, 1968, 278 Minn. supp. p. 85; 3 Youngquist & Blacik, Minnesota Rules Practice, 1968 Pocket Part, p. 117.

Plaintiffs contend that they are seeking relief by way of a mandatory injunction. Whether we call the proceeding man-

---

[2] See, Baird, *Judicial Review of Administrative Procedures in Minnesota*, 46 Minn. L. Rev. 451, 458.

damus or a mandatory injunction has little significance. In State ex rel. Sholes v. University of Minnesota, 236 Minn. 452, 463, 54 N. W. (2d) 122, 129, we discuss the difference between the two. There we said:

"Where the decision is right as a matter of law, this court will affirm." [3]

See, also, Reid v. Independent Union of All Workers, 200 Minn. 599, 275 N. W. 300, 120 A. L. R. 297.

The use of mandamus to obtain relief similar to that sought here has been denied in some cases and permitted in others. See, for instance, Romsdahl v. Town of Long Lake, 175 Minn. 34, 220 N. W. 166; Powell v. Township of Carlos, 177 Minn. 372, 225 N. W. 296; Zion Evangelical Lutheran Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. (2d) 203, where the use of mandamus to obtain relief was denied; State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273, where its use was permitted. In State ex rel. Gopher Sales Co. v. City of Austin, 246 Minn. 514, 518, 75 N. W. (2d) 780, 783, we said:

"This court has repeatedly held, as have other courts, that mandamus will not lie to control the exercise of discretion of municipal and other governmental bodies or boards, having the duty of making decisions involving judgment and discretion but that such remedy will lie in those cases, among others, where such boards or bodies have acted arbitrarily, capriciously, or unreasonably."

In State ex rel. Lewis v. City Council of Minneapolis, 140 Minn. 433, 434, 168 N. W. 188, we said:

"Mandamus will not lie to control the discretion of the common council of a city and if the refusal to approve was in any sense an exercise of the discretionary power of the council the writ

---

[3] See, Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 37 Minn. L. Rev. 1, 22.

must be quashed. If, on the other hand, the refusal was purely arbitrary or was predicated on a ground not warranted by law, the council is subject to direction by the court and mandamus should issue. To warrant the interference of the court the duty must be positive, the legal right must be clear."

See, also, Minneapolis-Honeywell Regulator Co. v. Nadasdy, 247 Minn. 159, 76 N. W. (2d) 670.

In an article by Riesenfeld, Bauman, and Maxwell entitled *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L. Rev. 569, 593, we find the following:

"If an administrative board acts so arbitrarily or capriciously that in law it does not amount to a proper exercise of its discretion, mandamus will lie to make a new determination or to require other appropriate action. Thus in *Gleason v. University of Minnesota* [104 Minn. 359, 116 N. W. 650] the supreme court upheld the decision of the lower court which overruled the demurrer to a petition for an alternative writ of mandamus to compel reinstatement of relator as a student of the law department. The petition alleged that relator had been charged with but not tried for or found guilty of acts of insubordination. The court ruled that a denial of admission under such circumstances was beyond the range of the regents' discretion and therefore ordered admission. Similarly, the court in *State ex rel. Lewis v. City Council of Minneapolis* [140 Minn. 433, 168 N. W. 188] ordered the approval of a plat where the rejection of the same by the city was not in the lawful exercise of its discretion but was '* * * purely arbitrary or was predicated on a ground not warranted by law.' "

Where, as here, attack upon acts of the city council is made on the grounds that the action was arbitrary, capricious, or unreasonable, it would appear that some remedy should be available to correct the action if the court finds that plaintiffs' claims are well founded. Whether we call it mandamus or mandatory in-

junction does not seem too important if we reach the merits of the dispute. We are content to leave the technical distinctions to authors of law review articles and to try to arrive at some solution that will afford relief to a litigant deprived of a right. Thus, about the only rule we can glean from our cases is that mandamus ordinarily will not lie to control the exercise of discretion by administrative agencies, but it will lie if there is no other adequate and complete remedy. We think that is the situation here. A review by certiorari might lead to a decision that the city was wrong, but it would not provide the relief plaintiffs seek. An example of the evils that can exist in review by certiorari and the multiplicity of suits it creates is found in State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574. In that case, and in State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N. W. (2d) 583, we held that mandamus is a proper remedy to compel an administrative agency to perform duties required under a decision in a case reviewed by certiorari. See, also, State ex rel. Jenkins v. Ernest, 197 Minn. 599, 600, 268 N. W. 208, 209, where we said:

"It is, of course, well settled that a writ of *mandamus* brought against the proper appointing authority or authorities is the appropriate remedy to compel reinstatement when an officer or appointee has been discharged; and if it is shown that his dismissal was in violation of the civil service laws he will be restored to his former position. * * *

\* \* \* \* \*

"\* * * *Mandamus* cannot be used for the purpose of reviewing the decision of an officer, board, or tribunal which acted within the jurisdiction conferred upon it by law. It can properly be issued only to compel the performance of a duty which the law clearly and positively requires such officer, board, or tribunal to perform."

These decisions are not always easy to reconcile, but in the present case it comes down to a question of whether plaintiffs

have a right to the variance which they seek and to a building permit after such variance is granted. To compel plaintiffs to review the action of the city council by certiorari and then, if the right is found to exist, to enforce it by mandamus simply requires two actions where relief ought to be available in one. Under these circumstances we conclude that the rights of plaintiffs can be determined and enforced in this action, no matter what name we give to the proceeding.

We come, then, to the merits of the case.

The purposes of a variance in a zoning ordinance were aptly stated in Flagstad v. City of San Mateo, 156 Cal. App. (2d) 138, 141, 318 P. (2d) 825, 827:

"A variance provides the opportunity for amelioration of unnecessary hardships resulting from the rigid enforcement of a broad zoning ordinance, and thus avoids the acknowledged evils of 'spot zoning.' "

It would seem to us that this is the proper function of a variance.

To determine, then, whether the variance should have been granted, we must begin with the premise that the part of Lot 14 owned by plaintiffs was a "lot of record" within the definition of Article III, Section B, Paragraph 64, of the zoning ordinance at the time it was adopted in 1963. The lot had been severed and a deed of the part that plaintiffs now own had been recorded. The mere fact that the Youngs acquired both parts of the lot after severance did not reunite the two so as to constitute them a single lot.

The parcel, being a "lot of record," was entitled to a variance if the conditions of the zoning ordinance were complied with. The adjustment board, while it failed to make as complete findings as might be desired, did make the findings we have mentioned above. Implicit in these findings, we believe, are the others required for the granting of a variance. In the light of these facts, the city acted arbitrarily in denying the variance. To take away from this lot the right to a variance by the adoption of this

ordinance would be, as the trial court found, a violation of due process, in that it would deprive the property of any value.

It might be added that the objections of adjacent owners are not without merit when esthetic values are taken into consideration. All other adjacent homes are set back from the street a considerable distance, and it cannot be denied that zoning ordinances requiring definite setback, so that the appearance will be uniform, are proper. But in this case, due to the peculiar size and shape of the lot, to deny a variance would deprive plaintiffs of any use of their property; and even though granting the variance may work some hardship upon adjoining property owners, we believe the trial court was right in determining that the ordinance itself, when the conditions it prescribes are complied with, requires that the variance be granted.

Defendant also claims that the court has no authority to issue a building permit. All that need be said in answer to this claim is that if plaintiffs are entitled to this variance they are also entitled to a building permit. The variance would be of no value if plaintiffs still could not build upon the lot. Consequently, the court had power to order the issuance of a building permit as well as to determine the right to a variance. In so doing, the court tried to balance the equities as best it could by providing only the size of the house that could be built, leaving to the city a determination of the location and width of the variance.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.