Gordon **HEDLUND,** Appellant,

v.

**CITY OF MAPLEWOOD, et al.,**
**Respondents.**

**No. CO–84–1917.**

Court of Appeals of Minnesota.

April 23, 1985.

Seldon H. Caswell, North St. Paul, for appellant.

Patrick J. Kelly, St. Paul, for respondents.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Gordon Hedlund appeals from a trial court judgment declaring that the City of Maplewood's denial of an application for zoning variances was not arbitrary or unreasonable, a deprivation of equal protection, or a deprivation of the use and enjoyment of a lot without compensation. Hedlund contends that Maplewood's denial of the variances constitutes an undue hardship because a residence cannot be constructed on the lot without the variances. He also contends the denial of the variances constitutes an unconstitutional government taking of the land. We affirm.

## FACTS

Gordon Hedlund, an experienced real estate developer, acquired a 40' × 125' lot in Maplewood from the state at an auction of tax forfeited lands. The property was forfeited to the state in 1969. Maplewood authorized its sale in August of 1971. Hedlund perfected his interest by a certificate of sale of forfeited lands in 1982 and then discovered that he could not build a dwelling on the land without three variances.

The 5,000 square foot lot is undeveloped. It is located in an area which was originally platted in 1887. The current zoning requirements have been in effect since the early 1960's. It is zoned R-1, single-family residence, and is designated for low density use by the comprehensive plan which was adopted in 1973.

Hedlund inspected the lot and observed the surrounding land uses before bidding. There is a single dwelling located on a 125' wide parcel north of Hedlund's lot. South of his lot is a single dwelling on an 80' wide lot. To the west, there are single dwellings on 80' wide lots, and to the east there are single dwellings on 100'–120' wide lots.

Hedlund has bought many parcels of tax forfeited land. He does not always check the zoning and comprehensive use plan before buying. He has "bought betting— thinking I can sell it to a neighbor, I can

get the council to change their mind." He generally has encountered little difficulty, but has had to obtain variances for minor problems. Several years prior to his purchase of the Maplewood lot, he checked with various cities about building on 40' lots because he had run into trouble with a 40' wide tax forfeited lot which he purchased in Fridley. At that time, he talked to someone in Maplewood, whose name he cannot recall, and was informed 40' lots were buildable.

After Hedlund purchased the 40-foot lot, his brother-in-law applied to the City of Maplewood for the three variances which would be needed to construct a single-family residence on the lot. Sections 36–69 and 30–8(f)1 of the city code require a lot to be not less than 10,000 square feet in order to build such a dwelling. Hedlund's lot is 5,000 square feet. Sections 36–59 and 30–8(f) require a lot to be 75' wide at the building setback line. Hedlund's lot is 40' wide at the setback line. Section 30–8(F)1 requires a lot to have at least 60' of frontage. Hedlund's lot has 40' of frontage.

Maplewood denied similar area and width variance requests made by others in 1973 and 1982. Since the adoption of the comprehensive plan in 1973, it has never granted multiple variances which would permit the construction of a single-family residence on a 5,000 square foot lot.

The planning commission recommended that the variances be denied because: (1) development of the lot "would be inconsistent with the intent of the zoning code resulting in a dwelling out of character with the existing neighborhood development"; (2) an approval would be inconsistent with the denial of similar requests; (3) neighborhood density would further exceed the allowable maximums; (4) strict enforcement would not cause an undue hardship unique to the individual lot in question; and (5) any hardships would be self-imposed since the code requirements have been in effect since the 1960's. The city council accepted this recommendation and denied the variances citing the same reasons given by the planning commission.

Hedlund petitioned for a writ of mandamus to compel the city to issue the variances. The trial court found that the council's reasons for denying variances were supported by the facts and dismissed Hedlund's petition.

## ISSUE

Did the City of Maplewood act arbitrarily, unreasonably, capriciously, or beyond its legal powers in refusing to grant the three variances requested by Hedlund?

## ANALYSIS

 When reviewing a decision of a local governing body in a zoning matter, this court considers that decision independent of the findings and conclusions of the district court. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979). Inasmuch as a variance allows a property to be used in a manner forbidden by zoning ordinances, the applicant for a variance has a heavy burden to show that the grant is appropriate. *Luger v. City of Burnsville*, 295 N.W.2d 609, 612 (Minn.1980). Based upon an independent determination of the record, this court concludes that Hedlund has not met this burden and that the City of Maplewood's denial of the requested variances was reasonable.

 The Minnesota legislature has delegated to municipalities the power to plan for the use of the land within their boundaries by establishing zoning and planning ordinances. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 507 (Minn.1983); Minn.Stat. § 462.351 (1982). Municipalities may grant variances to their zoning and planning ordinances if strict enforcement would cause undue hardship. *Id.* at 507; Minn.Stat. § 462.357, subd. 6(2) (1982). A municipal decision-making body, however, has broad discretionary power to deny an application for a variance. *VanLandschoot*, 336 N.W.2d at 57.

Hedlund claims that Maplewood is obligated to grant the three variances that he requested because without them he cannot

build a single-family residence on the lot. Essentially his argument is the variances should be granted because of undue hardship.

Undue hardship means:

the property in question cannot be put to a reasonable use if used under conditions allowed by official controls, the plight of the landowner is due to circumstances unique to his property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality. Economic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance.

Minn.Stat. § 462.357, subd. 6(2) (1982).

Maplewood does not contest the fact that without the variances the lot cannot be put to a reasonable use. Rather, the Maplewood City Council found that Hedlund did not meet the remainder of the criteria for undue hardship as set forth in Minn.Stat. § 462.357 and denied the variances on that basis. Three of the five reasons given by the council for the denial are based on the remaining criteria of Minn.Stat. § 462.357. As such, the reasons are legally sufficient. In this case, each of the reasons is supported by the facts.

One of the reasons given by Maplewood for the denial is that any hardships would be self-imposed since the code requirements have been in effect since the 1960's. Under the statute, the plight of the landowner must not be "created by the landowner." Minn.Stat. § 467.357, subd. 6(2).

A person who purchases land with knowledge, actual or constructive, of the zoning restrictions which are in effect at the time of such purchase, is said to have created for himself whatever hardship such restrictions entail.

3 R. Anderson, *American Law of Zoning*, Section 18.42 (1977). This self-created hardship rule applies:

whether the applicant purchased the land with actual or constructive knowledge that the desired use was prohibited, and whether the knowledge was available to the applicant through a reading of the zoning regulations or examination of the premises.

3 R. Anderson, *American Law of Zoning*, Section 18.43 (1977).

Hedlund visited the lot in question and observed that the single-family residences immediately surrounding the lot in question were all built on lots which were at least twice as wide as the lot he was considering purchasing. He did not read the applicable ordinances even though he knew that certain cities such as Fridley and White Bear Lake do not permit building on a 40' wide lot. Further, the mailing which advised him of the auction stated that the land to be auctioned was governed by local zoning codes. Finally, Hedlund is an experienced buyer of tax forfeited land. He acknowledges that if he does not check the zoning ordinances and land use plan, he is "betting." Under these circumstances, we are compelled to conclude that Hedlund did, in fact, create his own hardship.

Maplewood also denied the variances because development of the lot would be inconsistent with the intent of the zoning code and would result in a dwelling out of character with existing neighborhood development. Minn.Stat. § 467.357, subd. 6(2), provides that the essential character of the locality must not be altered if the variance is granted. There is unrebutted testimony that the intent of the low density limitations and the large lot size requirement is to preserve the open space character of this particular area. Hedlund's lot is only half the size of the lot required by the code for the area. The variance he requested is not minimal. Thus, the essential character of open space would be altered if the variance was allowed.

Maplewood further denied the variances because strict enforcement would not cause an undue hardship unique to the individual lot in question. Minn.Stat. § 467.357, subd. 6(2), requires that the undue hardship be caused by circumstances unique to the property. In this case, there are three nearby 40' lots in addition to Hedlund's. Maplewood denied similar area and width

requests in 1973 and 1982. Thus Hedlund's circumstances are not unique to his property.

In sum, three of the reasons given by Maplewood for denying the variances are legally sufficient and each is supported by the facts. We need not consider the remaining two reasons to conclude that Maplewood's action in denying the variances was reasonable.

Hedlund claims this case is identical to *Currie v. Young,* 285 Minn. 387, 173 N.W.2d 410 (1969), a case in which the supreme court affirmed a writ of mandamus compelling Minneapolis to grant a setback variance which would allow the building of a dwelling on an undersized lot. *Currie* is clearly distinguishable. The Minneapolis zoning ordinance in *Currie* specifically stated that a single-family dwelling could be built, regardless of the size of the lot, on a lot within the definition of a "lot of record" pursuant to the ordinance, as long as the other requirements of the ordinance were met. The supreme court held that "the ordinance itself, when the conditions it described are complied with, requires that the variances be granted." There is no similar language in the Maplewood ordinance at issue compelling the granting of a variance.

Hedlund also claims that there has been an unconstitutional taking of the land parcel at issue because a residence cannot be constructed on the land. This argument is without merit.

> For there to be an unconstitutional taking a landowner must demonstrate that he has been deprived, through governmental action or inaction, of all reasonable uses of his land.

*Czech v. City of Blaine,* 312 Minn. 535, 253 N.W.2d 272, 274 (1977) (citations omitted).

Hedlund is an experienced real estate developer. He did not properly research the applicable zoning ordinances before he bought the land. His predicament is self-imposed. This court cannot conclude that such circumstances constitute a governmental taking of the land.

**DECISION**

Maplewood had legally sufficient reasons and a factual basis for denying Hedlund's request for variances. The city's action was not unreasonable, capricious, or beyond its legal powers.

Affirmed.