In re the Matter of the Decision of County of Otter Tail Board of Adjustment to Deny a Variance to Cyril STADSVOLD and Cynara Stadsvold.

No. A06–1696.

Supreme Court of Minnesota.

June 19, 2008.

Rehearing Denied Aug. 1, 2008.

Nathan L. Seeger, Nathan L. Seeger Law Office, Fergus Falls, MN, for Appellant.

Michael T. Rengel Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Fergus Falls, MN, for Respondent.

Scott R. Simmons, St. Paul, MN, for Amicus Curiae Association of Minnesota Counties.

# OPINION

PAGE, Justice.

This case arises from the decision of respondent Otter Tail County Board of Adjustment (Board) to deny an application for an area variance sought by appellants Cyril and Cynara Stadsvold under the County's Shoreland Management Ordinance. On appeal to the district court, the Board's denial of the variance was affirmed. On appeal to the court of appeals, the district court's decision was affirmed. We granted the Stadsvolds' petition for review. The issues on appeal include: (1) whether the setback requirements in the County ordinance apply to grandfathered nonconforming lots; (2) the proper standards to be applied to area and use variance requests; (3) whether the Board's decision to deny the Stadsvolds' variance request was arbitrary and capricious; and (4) whether the Board may consider an after-the-fact variance request as if it were before-the-fact. For the reasons discussed below, we reverse and remand for further proceedings, concluding that a county board of adjustment may grant an area variance on a showing of "practical difficulties."

The relevant facts in this case are largely undisputed. The Stadsvolds purchased an undeveloped lot on Blanche Lake in Otter Tail County in July 1982. The Stadsvolds' lot is a grandfathered nonconforming lot under the County's Shoreland Management Ordinance. The lot is 100 feet wide with an area of 17,627 square feet.[1] In 2001, the Stadsvolds developed plans to build a lake home and garage on the lot. They filed an application for a site permit with the County in November 2001 and amended their application in May 2002.

---

1. The ordinance requires, among other things, 40,000 minimum square footage and 150 feet minimum lot width for lots on recreational development lakes. Otter Tail County, Minn., Shoreland Management Ordinance § III.4.A (2004). The ordinance provides that lots existing before the 1971 effective date of the ordinance are exempt from the minimum area and width requirements set out in the ordinance, provided a site permit is obtained for construction of any structures, all sanitary requirements are met, and the proposed use is permitted in the district. *Id.* § IV.13.B.

The ordinance provides that an applicant for a site permit "shall stake out all lot lines and road right-of-ways" before the County's pre-approval inspection. Otter Tail County, Minn., Shoreland Management Ordinance § V.1.A (2004). The ordinance provides setback requirements for structures built on single family residence recreational developmental lake lots covered by the ordinance. *Id.* § III.4.A. Such structures must be set back 10 feet from lot lines and 20 feet from road right-of-ways. *Id.*

The Stadsvolds' site permit application indicated lot line setbacks for the house and garage of 10 feet and right-of-way setbacks of 22 feet for the house and 20 feet for the garage. The Stadsvolds did not have the lot surveyed, however, and the measurements set out in the application were based on stakes and pins put in place when the lot was initially platted. Using these same stakes and pins, the county inspector measured the house as 10 and 17 feet from the lot lines, the garage as 11 and 50 feet from the lot lines, and the garage as 26 feet from the road right-of-way. On that basis, the County approved the application for a site permit on August 8, 2002. The County physically inspected the lot on October 16, 2002, November 19, 2002, and July 15, 2003. Construction of both the house and garage was completed by July 15, 2003, and the County approved the completed project on that date.

In October 2004, it was discovered that the house and garage had been built within the setback areas. A subsequent survey of the lot confirmed that the house and garage were within the setback areas, with the house being 5 feet from the lot lines and 16.7 feet from the road right-of-way, and the garage being 5.1 feet from the road right-of-way.

On July 11, 2005, the Board of Adjustment cited the Stadsvolds for violating the lot line and road right-of-way setbacks in the County ordinance. At that point, the Stadsvolds had invested $236,917.44 in constructing the house and garage.

On August 8, 2005, the Stadsvolds applied to the Board for a variance from the setback requirements. Evidence submitted at the hearing on the variance application indicated that during an inspection of the Stadsvolds' property by three of the Board's members, one of the members expressed the view that obtaining the variance should not be a problem due to the substandard lot size. There was also evidence indicating that surrounding landowners did not oppose the variance being granted and that other property owners in the area had received variances for structures built within the road right-of-way setback area.

At the hearing on the variance, the Board chairperson indicated that the Board's decision would be based on the Stadsvolds' application and the physical visits to the lot by the Board members. The chairperson indicated that the Board would treat the application for the variance as if the variance had been sought before the house and garage had been built. Applying that approach, the Board members concluded that they would not have approved the request had it been sought before-the-fact because "[t]here was plenty of room on this lot" for reasonable use and the Stadsvolds could "[s]queeze [the house and garage] together a little bit." The Board therefore denied the variance. In its written denial, the Board concluded the Stadsvolds showed "no adequate hardship unique to the property" that would support granting the variance. In doing so, the Board noted that it would not have approved the variance had it been requested before construction on the property com-

menced, and that there was adequate room on the lot to obtain a reasonable use of the property without a variance.

The Stadsvolds appealed to the district court, which granted summary judgment in the County's favor. The court concluded that "the decision by the Board was reasonable, and the reasons for the decision are legally sufficient and have a factual basis." The court of appeals affirmed, concluding that the Board used the proper standard when it considered the Stadsvolds' application and that the Board's decision was not arbitrary or capricious. *In re Decision of County of Otter Tail Bd. of Adjustment,* No. A06–1696, 2007 WL 1898565, at *4–5 (Minn.App. July 3, 2007).

## I.

■ The preliminary question we address is whether an owner of a grandfathered nonconforming lot, which meets the criteria of the exemption for grandfathered lots, also must meet the ordinance's setback requirements. The exemption provides that structures may be built on grandfathered lots that do not conform to minimum square footage and lot width, "provided a Site Permit for the structure is obtained, all sanitary requirements are complied with and the proposed use is permitted within the district." Otter Tail County, Minn., Shoreland Management Ordinance § IV.13.B. The Stadsvolds claim that they are entitled to a building permit without having to meet the ordinance's other requirements because their lot is a grandfathered nonconforming lot, they obtained a site permit for the construction of the house and garage, they met all sanitary requirements, and the house and garage are permitted uses under the ordinance. The County argues that the Stadsvolds failed to raise this issue in front of the Board and therefore the issue has been waived.

Minnesota Statutes § 394.27, subd. 9, provides that decisions of the Board may be appealed to the district court. Minn. Stat. § 394.27, subd. 9 (2006). However, we have held that an appellate court must generally consider only those issues that were presented and considered below. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988); *see also Sletten v. Ramsey County,* 675 N.W.2d 291, 302 (Minn.2004) ("Issues raised for the first time on appeal are not to be considered."). Here, the issue of whether the ordinance's setback requirements could be applied to a grandfathered nonconforming lot was not presented to or considered by the Board. We, therefore, agree with the County that the issue is not properly before us.

## II.

The Stadsvolds also argue that the Board erred in applying an "adequate hardship" standard when determining whether to grant the variance because Minn.Stat. § 394.27, subd. 7 (2006), permits a county board of adjustment to grant a variance when a landowner would face "practical difficulties or particular hardship" in meeting the terms of the official control. The Stadsvolds contend that the less stringent "practical difficulties" standard applies to area variances, while the more stringent "particular hardship" standard applies to use variances. The County contends that the Stadsvolds cannot meet either standard.

Minnesota Statutes § 394.27, subd. 7, governs a county's power to grant variances and provides:

> Variances shall only be permitted when they are in harmony with the general purposes and intent of the official control in cases when there are practical difficulties or particular hardship in the way of carrying out the strict letter of any official control, and when the terms

of the variance are consistent with the comprehensive plan. "Hardship" as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under the conditions allowed by the official controls; the plight of the landowner is due to circumstances unique to the property not created by the landowner; and the variance, if granted, will not alter the essential character of the locality. Economic considerations alone shall not constitute a hardship if a reasonable use for the property exists under the terms of the ordinance.[2]

With certain additions, the Otter Tail County ordinance mirrors this language.[3] Otter Tail County, Minn., Shoreland Management Ordinance § V.5. Therefore, we have no need to differentiate between the language of the statute and the language of the ordinance.

■ We have not had occasion in the past to consider the difference, if any, between the "practical difficulties" and "particular hardship" standards. Determining whether there is a difference between the two standards and how to apply them requires us to construe Minn.Stat. § 394.27, subd. 7, which we do de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). When a statute's language is plain and unambiguous, we engage in no further construction. *Mavco, Inc. v. Eggink*, 739

N.W.2d 148, 153 (Minn.2007). A statute is ambiguous when the language "is subject to more than one reasonable interpretation." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). When construing statutes, our goal is to ascertain and give effect to the legislature's intent. Minn.Stat. § 645.16 (2006). We conclude that section 394.27, subdivision 7, is ambiguous because only "hardship" is defined, and it therefore is not clear from the statute when a county zoning authority's decision should be based on the "practical difficulties" or the "particular hardship" standard in a given case.

■ The legislature is presumed to have intended both "practical difficulties" and "particular hardship" to have meaning. *See* Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."); Minn.Stat. § 645.17(2) (2006) ("The legislature intends the entire statute to be effective and certain."); *Mavco*, 739 N.W.2d at 153 (citing *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958), for the proposition that we presume that the legislature "understood the effect of its words and intended the entire statute to be effective and certain"). We also presume that the legislature did not intend absurd or unreasonable results. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003). Moreover, distinctions in language in the same context are

---

2. The statutory standard for municipal variances is different. *See* Minn.Stat. § 462.357, subd. 6(2) (2006). Unlike section 394.27, subdivision 7, the municipal standard requires a showing of "undue hardship." Minn.Stat. § 462.357, subd. 6(2).

3. The ordinance additionally provides that the Board must consider:
 1. Whether the variance will secure for the applicant a right or rights that are enjoyed by other owners in the same area;

 2. Whether existing sewage treatment systems on the property need upgrading before additional development is approved;
 3. Whether granting the variance will be contrary to the public interest or damaging to the rights of other persons or to property values in the neighborhood.

Otter Tail County, Minn., Shoreland Management Ordinance § V.5.E. The ordinance further provides that "[n]o variance shall be granted simply because there are no objections or because those who do not object outnumber those who do." *Id.*

presumed to be intentional, and we apply the language consistent with that intent. *Transp. Leasing Corp. v. State*, 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972).

 Because they derogate the common law, we construe zoning ordinances narrowly against the government and in favor of the property owner. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980). Zoning ordinances were established "to control land use, and development in order to promote public health, safety, welfare, morals, and aesthetics." *State ex rel. Ziervogel v. Washington County Bd. of Adjustment*, 269 Wis.2d 549, 676 N.W.2d 401, 407 (2004) (citing *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 394–95, 47 S.Ct. 114, 71 L.Ed. 303 (1926)). The purpose of a variance is to provide "the opportunity for amelioration of unnecessary hardships resulting from the rigid enforcement of a broad zoning ordinance," thereby "avoid[ing] the acknowledged evils of 'spot zoning.'" *Curry v. Young*, 285 Minn. 387, 396, 173 N.W.2d 410, 415 (1969) (regarding a municipal variance) (quoting *Flagstad v. City of San Mateo*, 156 Cal. App.2d 138, 318 P.2d 825, 827 (1957)); *see also* Minn.Stat. § 394.22, subd. 10 (2006) (defining "variance" as "any modification or variation of official control where it is determined that, by reason of exceptional circumstances, the strict enforcement of the official controls would cause unnecessary hardship").

 There are two types of variances: use variances and area variances. "A use variance permits a use or development of land other than that prescribed by zoning regulations." *In re Appeal of Kenney*, 374 N.W.2d 271, 274 (Minn. 1985). In Minnesota, the authority of a county board of adjustment to grant a use variance is limited by statute: "No variance may be granted that would allow any use that is prohib-

ited in the zoning district in which the subject property is located." Minn. Stat. § 394.24, subd. 7; *see Kenney*, 374 N.W.2d at 274–75 (discussing circumstances under which use variances are permitted). An area variance controls "lot restrictions such as area, height, setback, density and parking requirements." *Kenney*, 374 N.W.2d at 274; *see generally* 3 Kenneth H. Young, *Anderson's American Law of Zoning* § 20.07, at 426–27 (4th ed. 1996). We have noted that unlike use variances, area variances do "not change the character of the zoned district." *Kenney*, 374 N.W.2d at 274.

 Looking to the history of the legislation that formed the basis for the enactment of section 394.27, subdivision 7, we conclude that the "practical difficulties" standard is the appropriate standard to apply to area variances and the "particular hardship" standard is the appropriate standard to apply to use variances. The "practical difficulties" and "unnecessary hardship" standards originated in the 1916 New York City Building Zone Resolution. *See* David W. Owens, *The Zoning Variance: Reappraisal and Recommendations for Reform of a Much–Maligned Tool*, 29 Colum. J. Envtl. L. 279, 282, 285, 285 n. 15 (2004). The original drafters of the New York ordinance recognized that an ordinance "could not fully anticipate all of the variations in particular parcels of land, individual land uses, and peculiar situations that would arise with zoning implementation." *Id.* at 283. Accordingly, the drafters intentionally used vague and general terms to allow local zoning boards to use variances as "a safety valve" for unforeseen circumstances. *Id.* at 283, 285 n. 19. Over time, the New York courts distinguished between the two standards by directing zoning authorities to consider whether there was a "unique" or "unnecessary" hardship when considering use vari-

ances and whether there were practical difficulties when considering area variances. *See, e.g., Vill. of Bronxville v. Francis,* 1 A.D.2d 236, 150 N.Y.S.2d 906, 909, *aff'd,* 1 N.Y.2d 839, 153 N.Y.S.2d 220, 135 N.E.2d 724 (1956). The New York courts have also given definition to the term "practical difficulties," concluding that when addressing area variance requests, zoning boards should consider:

> (1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities * * *, (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance.

*Wachsberger v. Michalis,* 19 Misc.2d 909, 191 N.Y.S.2d 621, 624 (1959), *aff'd,* 18 A.D.2d 921, 238 N.Y.S.2d 309, 309 (1963).[4] Minnesota enacted section 394.27 in 1959 but did not adopt a specific statutory standard for granting variances at that time. Act of Apr. 24, 1959, ch. 559, § 7, 1959 Minn. Laws 882, 885–86. In 1974, the legislature amended section 394.27, when the legislature provided a definition of a "variance" and incorporated the "practical difficulties or particular hardship" language. Act of Apr. 11, 1974, ch. 571, § 27, 1974 Minn. Laws 1401, 1408–09.

Courts across the country have taken differing approaches when construing language similar or identical to the "practical difficulties or particular hardship" language in Minn.Stat. § 394.27, subd. 7. *See* 3 Young, *supra,* § 20.48, at 579–80. "[U]naided by statutory or other legislative language," courts have applied different standards to requests for use and area variances. *Id.* "In most states, the courts will approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance." *Id.* Courts in some states with zoning enabling statutes containing both the "practical difficulties" and "hardship" standards have concluded that area variance applicants are required to meet the less rigorous "practical difficulties" standard. *See, e.g., Matthew v. Smith,* 707 S.W.2d 411, 416 (Mo.1986) (adopting the New York approach and holding area variances may be granted upon a *"slightly* less rigorous" standard of "practical difficulties"). Other jurisdictions do not make a distinction between the two standards. *See, e.g., 165 Augusta St., Inc. v. Collins,* 9 N.J. 259, 87 A.2d 889, 891 (1952) ("We perceive no practical difference between [undue hardship] or [peculiar and exceptional practical difficulties]. * * * The former is necessarily inclusive of the latter, for where peculiar and exceptional difficulties exist undue hardship also exists.") (internal citations omitted).

Even in states in which the enabling legislation uses a singular "hardship" standard, the courts have read into the statutes a less rigorous standard for area variances. For example, although Ohio Rev.

---

4. In 1992, New York enacted legislation setting out a formula that balances the impact of the variance request on the applicant and the community. *See Sasso v. Osgood,* 86 N.Y.2d 374, 633 N.Y.S.2d 259, 657 N.E.2d 254, 257–58 (1995). As a result, area variance appli-

cants no longer have to prove "practical difficulties." However, the legislative formula parallels the judicially-created factors used to define "practical difficulties." *See id.,* 657 N.E.2d at 259.

Code § 303.14(B) (2006) permits variances to be granted based only on "unnecessary hardship," the Ohio Supreme Court also followed the New York approach and echoed the *Wachsberger* "practical difficulties" factors for area variances. *See Duncan v. Vill. of Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692, 695 (1986). Similarly, Wisconsin Statutes § 59.694(7)(c) (2006) sets out a single "unnecessary hardship" standard for variances. The Wisconsin Supreme Court, however, has held that area variances may be granted upon a lesser showing. *See State v. Outagamie County Bd. of Adjustment*, 244 Wis.2d 613, 628 N.W.2d 376, 383–89 (2001) (plurality opinion) (overturning prior decision holding "unnecessary hardship" applied to both use and area variances because holding "defies practical workability, lacks sufficient justification, and is detrimental to the coherence of the law of zoning in this state").

We are persuaded that the reasoning of the states applying a lesser standard to area variance requests is sound. As the Wisconsin Supreme Court has noted, applying the higher use variance standard is "largely disconnected from the purpose of area zoning, fails to consider the lesser effect of area variances on neighborhood character, and operates to virtually eliminate the statutory discretion of local boards of adjustment to do justice in individual cases." *Ziervogel*, 676 N.W.2d at 404. Further, recognizing that most courts distinguish between the effect that area and use variances have on the use of the land, "in the case of area variances, it is assumed by most courts that adequate protection of the neighborhood can be effected without the imposition of the stringent limitations which have been developed in the use variance cases." *Outagamie County Bd. of Ad-*

*justment*, 628 N.W.2d at 389 (quoting Young, *supra*, § 20.48 at 581).

 Given that we have recognized the different effects of use and area variances, *see In re Appeal of Kenney*, 374 N.W.2d at 274, we hold that area variances shall be permitted by a county zoning authority when the applicant makes a showing only of "practical difficulties" under Minn.Stat. § 394.27, subd. 7, whereas an applicant for a use variance must establish particular hardship as set forth in the statute. We further hold that the factors for consideration under the "practical difficulties" standard include: (1) how substantial the variation is in relation to the requirement; (2) the effect the variance would have on government services; (3) whether the variance will effect a substantial change in the character of the neighborhood or will be a substantial detriment to neighboring properties; (4) whether the practical difficulty can be alleviated by a feasible method other than a variance;[5] (5) how the practical difficulty occurred, including whether the landowner created the need for the variance; and (6) whether, in light of all of the above factors, allowing the variance will serve the interests of justice.

Noting that the legislature has limited the authority to grant variances to "exceptional circumstances," Minn.Stat. § 394.22, subd. 10, we caution, as did the Wisconsin Supreme Court, that our adoption of a less rigorous standard for area variances "is not to say that area variances should be, or are, automatic or easy to obtain." *Outagamie County Bd. of Adjustment*, 628 N.W.2d at 389.

### III.

 Having concluded that the practical difficulties standard is the standard to be applied when county zoning

---

**5.** Economic considerations play a role in the analysis under this factor.

authorities consider area variances and having identified the parameters of that standard, we now turn to the Board's denial of the Stadsvolds' application for a variance in this case. We review zoning actions to determine whether the zoning authority " 'was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination.' " *Frank's Nursery Sales, Inc.*, 295 N.W.2d at 608 (quoting *Vill. of Edina v. Joseph*, 264 Minn. 84, 93, 119 N.W.2d 809, 815 (1962)).

The Board, using an "adequate hardship" standard, did not consider practical difficulties. The Stadsvolds argue the Board's decision was therefore arbitrary and capricious. The Board did not have the benefit of our holding in this case regarding "practical difficulties." We cannot tell whether the Board's decision was arbitrary and capricious. Therefore, remand is required to allow the Board to consider the Stadsvolds' variance application in light of our holding that applications for area variances are to be considered using the "practical difficulties" standard in Minn.Stat. § 394.27, subd. 7.

Although we remand to allow the Board to determine whether the Stadsvolds' variance request meets the "practical difficulties" standard, we also, in order to provide guidance on remand, address the Stadsvolds' claim that the Board's denial of the variance was arbitrary and capricious because it failed to consider the factors set out in the County's ordinance.

■ Whether a local zoning body's decision is reasonable is measured against the standards set forth in the applicable ordinance. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 n. 6 (Minn.1983). In addition to requiring the Board to consider whether there are "practical difficulties or unnecessary hardship," the ordinance also requires the Board to consider whether: (1) "the variance will secure for the applicant a right or rights that are enjoyed by other owners in the same area"; (2) sewage treatment systems need upgrading; and (3) "the variance will be contrary to the public interest or damaging to the rights of other persons or property values in the neighborhood." Otter Tail County, Minn., Shoreland Management Ordinance § V.5.E. There is no indication in the record that the Board considered any of these factors. We have held that when resolving variance requests, the zoning authority must "articulate the reasons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance." *Earthburners, Inc. v. County of Carlton*, 513 N.W.2d 460, 463 (Minn.1994). When the zoning authority fails to comply with this requirement, it is difficult if not impossible for a reviewing court to determine whether the zoning authority's decision was proper, was predicated on insufficient evidence, or was the result of the zoning authority's failure to apply the relevant provisions of the zoning ordinance. *See generally In re Livingood*, 594 N.W.2d 889, 895 (Minn. 1999); *VanLandschoot*, 336 N.W.2d at 508. A decision predicated on insufficient evidence or arising from a failure to apply relevant provisions of the ordinance would be arbitrary and capricious. In the absence of the Board in this case having articulated its reasons in the manner required by *Earthburners*, we cannot determine the basis for the Board's decision.

If the zoning authority's decision is arbitrary and capricious, the standard remedy is that the court orders the permit to be issued. *In re Livingood*, 594 N.W.2d at 895 ("[T]he general principle [is] that when a governmental body denies a permit with such insufficient evidence that the decision

is arbitrary and capricious, the court should order issuance of the permit."). However, an exception to the general rule exists when the zoning authority's decision is premature and "not necessarily arbitrary." *Earthburners,* 513 N.W.2d at 463. In *Earthburners,* we remanded to the zoning authority to allow "renewed consideration" of the zoning application because it was unclear as to whether the authority had applied the relevant provisions of the statute. *Id.* To prevent unfairness, we required the zoning authority on remand to "confine its inquiry to those issues raised in earlier proceedings before the planning commission and county board while allowing adequate opportunity for a meaningful discussion of those issues." *Id.* Thus, on remand in this case, the Board must apply both the "practical difficulties" standard, including the factors discussed above, and all of the other factors required by the ordinance. Also, as required by *Earthburners,* the Board shall "articulate its reasons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance" and "confine its inquiry to those issues raised in [the] earlier proceedings."

## IV.

Finally, we consider the Stadsvolds' argument that the Board erred by treating their application as a before-the-fact variance request. The County argues that it has broad discretion to treat before-the-fact and after-the-fact variances the same and that it "makes sense" because "it discourages people from purposely violating the [ordinance]" and then presenting the Board with the fact of the completed construction.

First, we note that, because circumstances involved in before-the-fact variance requests and after-the-fact variance requests are fundamentally different, treating them the same can produce unfair results. At the same time, we acknowledge that boards of adjustment generally have broad discretion in considering variance requests. But we also note that the Board here had the authority to consider the facts as they existed at the time of the Stadsvolds' request. In *In re Appeal of Kenney,* a case involving a county board of adjustment's authority to grant the variance sought, we suggested that the board, on remand, consider certain after-the-fact elements, including whether the applicant acted in good faith, attempted to comply with the ordinance, and made a substantial investment. 374 N.W.2d at 275. We also "urged" the board to consider whether (1) the construction was completed, (2) there were similar structures in the area, and (3) the county's benefits were outweighed by the applicant's burden if the applicant were required to comply with the ordinance. *Id.* Here, it is not clear from the record, however, that the Board understood that it had such authority.

To the extent that the County is concerned about variance applications arising out of purposeful violations of its ordinance, such concerns should be alleviated by considering whether the applicant acted in good faith and attempted to comply with the ordinance, and whether, in light of all the factors, the interests of justice will be served by granting the variance. Further, there would be nothing inappropriate in the Board distinguishing between an "unintentional mistake" and "wilful and intentional encroachment." *See Moyerman v. Glanzberg,* 391 Pa. 387, 138 A.2d 681, 685 (1958); *see also* 3 Young, *supra,* § 20.57, at 617 ("Some courts have given relief where the good faith of the applicant was apparent and the offense to the ordinance was small or harmless."). Indeed, we have affirmed a permanent injunction in a case involving landowners who

knew that they were proceeding without a permit when they started remodeling and that in doing so they were violating the ordinance. They knowingly violated the law, and the fact that they spent money in so doing does not justify them nor avail them of the hardship clause in the ordinance.

*Newcomb v. Teske,* 225 Minn. 223, 227, 30 N.W.2d 354, 356 (1948). Here, there is nothing in this record to suggest, and the County does not argue that, the Stadsvolds acted in bad faith, engaged in a willful and intentional encroachment, proceeded without a permit, or otherwise intentionally violated the ordinance. In fact, the record suggests that the Stadsvolds made a good-faith mistake that resulted in an unintentional violation of the ordinance. Further, the record indicates that other properties in the area have received a variance for similar setback violations. Therefore, on remand, we urge the Board to treat the Stadsvolds' variance application as an application for an after-the-fact variance and consider the equitable factors we set out in *Kenney.*

Reversed and remanded.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

GILDEA, Justice (concurring).

I join in the majority's conclusion that the matter be reversed and remanded to the Otter Tail County Board of Adjustment. I write separately because I disagree with the way in which the majority reaches its conclusion to reverse and remand.

The majority rewrites the relevant statute, Minn.Stat. § 394.27, subd. 7 (2006), so that the "practical difficulties" standard in the statute applies only to area variances and the "particular hardship" standard applies only to use variances. But we long ago recognized that we are not to add words to statutes or otherwise judicially legislate. *State v. Willrich,* 72 Minn. 165, 167, 75 N.W. 123, 124 (1898) ("We must accept the law as we find it, and not attempt any judicial legislation to supply supposed omissions."). In addition, it seems to me that the restrictions the majority writes into the statute are arguably inconsistent with our precedent that we are to construe zoning ordinances in favor of landowners. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). Before today, both the "practical difficulties" and "particular hardship" standards were available to landowners, but now a landowner is restricted depending on the type of variance she seeks. Such restrictions should be made by the legislative branch, not the judicial branch.

Finally, rewriting the statute is not necessary to the resolution of this case. As the majority concludes, the Board did not apply the "practical difficulties" standard to the variance application in this case. Thus, a remand is required for the Board to consider the application under that standard. In addition, and as the majority also concludes, the Board's decision does not reflect whether it considered the requirements of its own ordinance and so the record is not adequate for meaningful judicial review. As such, a remand is required to the Board for this reason as well. *See Earthburners, Inc. v. County of Carlton,* 513 N.W.2d 460, 463 (Minn.1994) ("In the proceedings on remand, the board must

articulate the reasons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance.").

Because the Board did not apply the "practical difficulties" standard and its decision does not reflect that it followed its own ordinance, I would remand this matter for further consideration by the Board, and I would not reach the question of whether the statute needs to be rewritten.